In the Matter of EMERGENCY BEACON CORP., Debtor.

Nos. 83 Civ. 3643 (DNE), 83 Civ. 3644 (DNE).

United States District Court, S.D. New York.

Aug. 21, 1985.

Barr & Faerber, Spring Valley, N.Y., Harvey S. Barr of counsel as Trustee-in-Possession and Attorney for Trustee-in-Possession, appellee.

Kronish, Lieb, Shainswit, Weiner & Hellman, New York City, Richard Lieb and Laurence J. Kaiser of counsel for Montmarco, Inc., appellee-cross appellant.

Stephen J. Glatzer, pro se.

## OPINION AND ORDER

EDELSTEIN, District Judge:

This case involves two appeals from the decision of Judge Howard Schwartzberg of the United States Bankruptcy Court regarding attorney's fees. *In re Emergency Beacon Corp.*, 27 B.R. 757 (Bankr.S.D.N.Y. 1983). For the reasons set forth herein, the decision of the Bankruptcy Court is affirmed in part and reversed in part.

## BACKGROUND

Familiarity with the facts pertinent to these appeals as set forth in Judge Schwartzberg's opinion is assumed. The first appeal, 83 Civ. 3644, is brought by Montmartco, Inc. ("Montmartco"), one of the secured creditors of the debtor, Emergency Beacon Corp. ("EBC"). In 1978, Judge Schwartzberg vacated an order he had signed in 1976 which authorized the issuance of a certificate of indebtedness in favor of Montmartco.[1] Judge Schwartzberg ruled that he had never intended to issue the certificate of indebtedness. Montmartco appealed this ruling on the ground that Judge Schwartzberg lacked the authority to vacate the 1976 order. Montmartco lost on appeal to the district court. *In re Emergency Beacon Corp.*, 3 Bankr. L. Rep. (CCH) ¶ 67,480 (S.D.N.Y. 1980). The district court's affirmance of the bankruptcy court's ruling was affirmed by the Court of Appeals for the Second Circuit. *In re Emergency Beacon Corp.*, 666 F.2d 754 (2d Cir.1981).

On remand, Judge Schwartzberg ordered Montmartco to pay the costs and counsel fees incurred by the trustee-in-possession in defending Montmartco's two unsuccessful appeals of the bankruptcy court's denial of Montmartco's application for the issuance of a certificate of indebtedness. Judge Schwartzberg found that "Montmartco's efforts to override the bankruptcy court's correction of the mistaken authorization of a certificate of indebtedness caused an additional burden to this [EBC's] estate and thwarted the process of administration of this case ...." *In re Emergency Beacon Corp., supra,* 27 B.R. at 764. The Judge further found that Montmartco's conduct in preventing the rectification by the bankruptcy court of the mistaken authorization of the certificate of indebtedness was "in bad faith, ... tantamount to impeding the administration of this case and was without any legal or factual support." *Id.* at 763.

---

1. As stated by the court of appeals, "[t]he effect of a certificate of indebtedness is to give its holder priority status over other general credi-
tors." *In re Emergency Beacon Corp.,* 666 F.2d 754, 755 (2d Cir.1981).

Judge Schwartzberg also sanctioned Montmartco for filing a frivolous motion to dismiss the debtor's reinstituted Chapter XI proceeding. The bankruptcy court ruled that this motion "was frivolously commenced, in light of the pending litigation in the Second Circuit Court of Appeals in which this [the bankruptcy] court's authority to accept the reinstituted Chapter XI petition and to reject the certificate of indebtedness issued during the first Chapter XI case was already at issue." *Id.* at 761. In 1981, the bankruptcy judge sanctioned Montmartco $500.00 for this conduct. This sanction was upheld on appeal to the district court on September 21, 1981. In the order appealed from herein, Judge Schwartzberg ordered Montmartco to reimburse the trustee in possession for counsel fees incurred in defending the motion and the subsequent appeal. The Judge found that the motion to dismiss the Chapter XI proceeding was made after the bankruptcy court had approved the Chapter XI petition. Moreover, the motion was made after the district court had affirmed the bankruptcy court's authority to modify its previous order by disallowing the certificate of indebtedness during the reinstituted Chapter XI. The bankruptcy court concluded that "[t]he trustee in possession and the debtor's estate should not be required to absorb the legal fees caused by Montmartco's motion, which was entirely devoid of color and made without reasonable basis in fact or law." *Id.* at 765. Montmartco then filed this appeal of the bankruptcy court's award of attorney's fees to the trustee-in-possession based on Montmartco's actions in both the certificate of indebtedness litigation and the motion to dismiss the reinstituted Chapter XI proceeding.

The second appeal, 83 Civ. 3643, is brought by Stephen Glatzer ("Glatzer"), one of the founders of EBC and its president. The bankruptcy judge granted Glatzer leave to intervene in the bankruptcy proceedings to represent his own interests as a shareholder in EBC, the debtor. *See id.* at 768. Glatzer, who is not an attorney and has appeared *pro se* throughout the bankruptcy proceedings, petitioned the bankruptcy court for an award of attorney's fees against Montmartco because of Montmartco's bad faith and frivolous litigation tactics, including the filing of the aforementioned appeals involving the certificate of indebtedness. The bankruptcy court denied Glatzer's application with respect to the certificate of indebtedness litigation on two grounds. First, the bankruptcy court followed the majority rule that "a non-attorney who represents himself cannot" receive compensation for attorney's fees. *Id.* at 768. Second, the court ruled that Glatzer as a volunteer was not entitled to attorney's fees. The court noted that "the debtor, EBC, the entity directly affected by the certificate, was adequately represented by trustee's counsel.... [T]he trustee's counsel amply protected the debtor's interests, and although Mr. Glatzer may have voluntarily offered his time and assistance to trustee's counsel during the course of the certificate litigation, there are no grounds for additionally awarding attorney's fees to Mr. Glatzer as an intervenor pro se." *Id.* at 769.

Glatzer also contended that Montmartco's tactics with regard to two automobiles in Glatzer's possession were in bad faith. The facts involved in the automobiles litigation are as follows. When Glatzer left EBC in 1974, it was agreed that he was to obtain the book value for the two cars in his possession. Glatzer did not receive any certificates of title and did not give any value for the cars until after EBC filed its first Chapter XI proceeding, when, in 1977, the bankruptcy court ordered Glatzer to reduce his claim against EBC by the book value of the cars. In 1975, however, Montmartco had obtained a security interest in various EBC property and it contended before the bankruptcy court that its lien applied to the cars, because in 1975, title to the cars remained with EBC. The bankruptcy court ruled in favor of Montmartco on this issue. Glatzer appealed this ruling to the district court, which affirmed, and to the court of appeals. The court of appeals reversed the bankruptcy court, holding that a sale of the cars had actually occurred in

1974 under the terms of the buy-out agreement between Glatzer and EBC, and therefore, that Montmartco could not have obtained a security interest over the cars in 1975.

During the pendency of the appeal to the court of appeals on the automobile litigation, the bankruptcy judge admonished the parties, and particularly Glatzer, several times that the judge would require the loser of the appeal to pay the prevailing parties' attorney's fees. After prevailing on appeal, Glatzer petitioned the bankruptcy judge to follow through on his earlier statements and to award Glatzer attorney's fees incurred in the automobiles litigation. The bankruptcy court denied this request on a number of grounds. First, the court found that Montmartco's litigation tactics with respect to the automobiles issue did not amount to bad faith. The court stated, "[t]he question that had existed regarding the certificates of title and the issue as to whether a sale had actually occurred in 1974, were legitimate assertions on Montmartco's part and constituted a reasonable basis for its belief that its lien claim against the vehicles would be upheld. Montmartco's lien claim was therefore colorable, and not in bad faith." *Id.* at 764.[2] Second, the court rejected Glatzer's contention that the bankruptcy judge's statements concerning his intention to award attorney's fees to the prevailing party were tantamount to stipulations between the parties that the loser would pay the winner's fees. The court held that there is no

basis in the record for a finding that the parties had so stipulated and that, even if there had been a stipulation, the bankruptcy court was not bound to accept it. *Id.* at 769. Third, the bankruptcy judge declined to order fees based on the "general rule" that *pro se* litigants are not entitled to attorney's fees. *Id.* at 770. Glatzer then filed this appeal.

## DISCUSSION

I. *The Montmartco Appeal, 83 Civ. 3644.*

a. *Jurisdiction.*

■ Under 28 U.S.C. § 158, effective June 10, 1984, district courts "have jurisdiction to hear appeals from final judgments, orders and decrees, and, with leave of the court, from interlocutory orders and decrees," of bankruptcy court judges.[3] Although Judge Schwartzberg's award of attorney's fees to the trustee cannot be considered "final" insofar as it did not end the bankruptcy litigation on the merits, *see Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945), this court nevertheless has appellate jurisdiction if the decision falls within the collateral order exception to the final judgment rule, *see In re Johns-Manville Corp.,* 32 B.R. 728, 731 (S.D.N.Y.1983). In *Cheng v. GAF Corp.,* 713 F.2d 886, 888–89 (2d Cir. 1983), *vacated,* —— U.S. ——, 105 S.Ct. 3493, 87 L.Ed.2d 626 (1985), the Court of Appeals for the Second Circuit held that the district court's award of $1,000.00 in

2. The bankruptcy judge made this ruling in the context of the trustee-in-possession's application for reimbursement of counsel fees incurred in connection with the automobiles litigation. This finding, however, is equally applicable to Glatzer's application. If Montmartco had a colorable claim to the cars, it was not bad faith for it to litigate its claim to the cars, regardless of its adversary.

3. This appeal was filed during the transition period before the enactment of the 1984 amendments to the Bankruptcy Code, 28 U.S.C. §§ 151–160 (Supp.1985). In the Bankruptcy Reform Act of 1978, Congress provided that appeals to the district court of bankruptcy court rulings were to be governed by 28 U.S.C. § 1334, which provided:

(a) The district courts ... shall have jurisdiction of appeals from all final judgments, orders and decrees of bankruptcy courts.
(b) The district courts ... shall have jurisdiction of appeals from interlocutory orders and decrees and decrees of bankruptcy courts, but only by leave of the district court to which the appeal is taken.
This court is bound to apply the 1984 amendments to the Bankruptcy Code to the instant proceeding. *See in re Osborne,* 42 B.R. 988, 993 (W.D.Wis.1984). However, because of the similarity between the two statutes, cases interpreting 28 U.S.C. § 1334 as it stood during the transition period are instructive in interpreting 28 U.S.C. § 158.

attorneys' fees, costs and expenses against an attorney for petitions filed in the appellate courts was an appealable collateral order. The court stated that in order to qualify for immediate review, the order "must meet three criteria: '[T]he order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from final judgment.'" *Id.*, at 888 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978)). The bankruptcy court's award in this case is distinguishable from the award in *Cheng*, because the bankruptcy judge has not yet held a hearing on the trustee's fee application and determined the exact amount of the award. Thus, the bankruptcy judge has not yet "conclusively determined the disputed question." *See In re Johns-Manville Corp., supra*, 32 B.R. at 731. Moreover, the bankruptcy judge's order is not "effectively unreviewable on appeal." [4]

Although Judge Schwartzberg's order granting the trustee's claim for attorney's fees against Montmartco is not appealable as of right, this court may nevertheless grant leave to appeal the order under 28 U.S.C. § 158.[5] The court deems this an appropriate case for the grant of leave to appeal. An award of attorney's fees to the trustee-in-possession will affect the amount of funds in the debtor's estate. Montmartco has an outstanding mortgage on EBC's real estate. The bankruptcy court has ordered the mortgage payments with respect to this mortgage to be placed in an escrow money market account as security for any attorney's fees and/or costs that might be

assessed against Montmartco. A speedy and final resolution of the attorney's fees question will free this fund and foster the efficient resolution of the bankruptcy proceeding. Moreover, if the court determines now that the trustee is not entitled to attorney's fees, the parties will have been saved the expense of a hearing in the bankruptcy court to determine the reasonableness of the trustee's fee application.

The parties to this appeal have already spent considerable effort trying to resolve the attorney's fee question. On June 8, 1983, this court remanded the case to the bankruptcy judge to attempt to effect a settlement among the parties and thereafter to submit a blind memorandum to this court, describing the efforts of the bankruptcy judge to achieve a settlement and reporting those issues which appear resolvable and those areas in which there remain differences. Montmartco's appeal of this order was dismissed by the court of appeals on December 27, 1983.[6] The bankruptcy court then held hearings and settlement conferences in an effort to resolve the disputes. The bankruptcy judge has reported to the court that although the parties had reached a preliminary settlement of $30,000.00, that settlement fell through based on Montmartco's demand that it be released from all claims the estate might have against it arising out of the bad faith litigation. The trustee stated that the settlement was to relate to counsel fees and nothing more. In view of the considerable effort already expended by the parties to resolve this matter, the importance of the issues involved and the

---

4. Additional support for this court's conclusion that the collateral order doctrine is not applicable in this case is the Supreme Court's summary decision to vacate the two second circuit decisions in *Cheng, supra,* & 747 F.2d 97 (2nd Cir. 1984) "for want of jurisdiction," 105 S.Ct. 3493, and the Court's decision in *Flanagan v. United States,* 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984), which held that there is no interlocutory appellate jurisdiction of pretrial disqualifications in criminal cases, the collateral order doctrine does not apply in this case. *See In re United States,* 733 F.2d 10, 14 (2d Cir.1984) ("Supreme Court recently has indicated an in-

tention to cut back on the litigation explosion by restricting the *Cohen* rule.").

5. Although no formal request for leave to appeal was made to this court, the court treats the notice of appeal filed with the bankruptcy court as an application for leave to appeal. *In re Johns-Manville Corp., supra,* 32 B.R. at 731.

6. The court of appeals refused Glatzer's request for sanctions against Montmartco for its filing of the appeal.

possibility of their recurrence, grant of leave to appeal is appropriate.

b. *Standard of Review.*

█ The new amendments to the Bankruptcy Code distinguish between two categories of cases which may be heard by the bankruptcy court: core proceedings and non-core proceedings. *See* 28 U.S.C. § 157. 28 U.S.C. § 157(c)(1) provides that a bankruptcy judge may preside over a non-core proceeding that is otherwise related to a title 11 case. Section 157(c)(1) further provides that "[i]n such proceeding, the bankruptcy court judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." Thus, in conducting review of non-core proceedings, the district court "may consider the evidence *de novo*, and need give no deference to the findings of the Bankruptcy Judge." *In re G & L Packing Co., Inc.*, 41 B.R. 903, 913 (N.D.N.Y.1984).

The new amendments to the Bankruptcy Code do not provide a standard of appellate review of bankruptcy court adjudications of core proceedings. However, 28 U.S.C. § 158(c) provides that appeals from decisions of bankruptcy judges "shall be taken in the same manner as appeals in civil proceedings generally are taken to the court of appeals from the district courts...." As one court has reasoned, "[s]ince Rule 52(a), Federal Rules of Civil Procedure, applies the clearly erroneous standard from appeals taken from district courts to courts of appeals, the clear implication of both § 158(c) and the special *de novo* review procedure of § 157(c)(1) is that

Congress intended that the clearly erroneous standard apply in appeals from decisions of bankruptcy judges in 'core' proceedings." *In re Osborne*, 42 B.R. 988, 993 (W.D.Wis.1984); *accord In re X–Cel, Inc.*, 46 B.R. 202, 203–04 (N.D.Ill.1984); *In re G & L Packing Co., Inc., supra*, 41 B.R. at 913 n. 2.[7] Accordingly, this court's determination of the appropriate standard on review depends on whether the bankruptcy court decision involved a core or non-core proceeding.

█ Core proceedings "include most matters which are integral to the adjudication of bankruptcy or were traditionally before the bankruptcy court." *In re X–Cel, supra*, 46 B.R. at 204. 28 U.S.C. § 157(b)(2), defines the term core proceeding by example; it provides that "Core proceedings include, but are not limited to—(A) matters concerning the administration of the estate; (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and elimination of claims or interest for the purposes of confirming a plan under chapter 11 ...; (K) determinations of the validity, extent, or priority of liens; (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims." The term non-core proceeding is not specifically defined by the statute, but in view of the Supreme Court's decision in *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), non-core proceedings involve "the adjudication of state-created private rights, such as the right to recover contract damages ...," and any matter "outside the core of federal bankruptcy power." *Id.* at 71, 102 S.Ct. at 2871.

---

7. Bankruptcy Rule 8013 provides that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." The Advisory Committee's Note to Rule 8013 cites Rule 52 of the Federal Rules of Civil Procedure: "This rule accords to the findings of the bankruptcy judge the same weight given findings of a district judge under Rule 52 F.R.Civ.P." Thus, the Advisory Committee's note is consistent with the reasoning of this and other courts that Congress intended to retain the clearly erroneous standard on review of bankruptcy court adjudications of core proceedings. *See In re X-Cel, Inc., supra*, 46 B.R. at 204 n. 3.

■ The court concludes that the bankruptcy proceeding appealed from herein is a core proceeding. The litigation involving the reinstituted Chapter XI proceeding, the certificate of indebtedness, and Glatzer's two automobiles all fall within the subsections of 28 U.S.C. § 157(b)(2) cited above. It follows then that Judge Schwartzberg's sanction order for vexatious action taken during these core proceedings is itself a core proceeding. The award of attorney's fees certainly "affects the liquidation of the assets of the estate," because if the debtor is saved the expense of attorney's fees, there will be more assets in the estate. More importantly, Judge Schwartzberg found that Montmartco's efforts "caused an additional burden to this estate and thwarted the process of administration of this case." 27 B.R. at 764. The bankruptcy court's inherent power to sanction parties for interfering with the administration of the bankruptcy court and burdening the estate is well established. *In re Swofford,* 112 F.Supp. 893, 896 (D.Minn.1952); *In re Miller,* 14 B.R. 443, 446–48 (Bankr.E.D.N.Y.1981). Attorney's fee proceedings in connection with litigation tactics that occurred during a core proceeding traditionally have been before the bankruptcy court. If the bankruptcy courts are to administer "the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power," they must also have the power to sanction parties that interfere with such administration. This fosters efficient resolution, not only of the pending bankruptcy proceeding, but of future ones as well. Accordingly, the court holds that a hearing by the bankruptcy court to impose sanctions based on conduct occurring during a core proceeding is a "matter ... integral to the adjudication of bankruptcy," and one that has been "traditionally before the bankruptcy court." *In re X–Cell, supra,* 46 B.R. at 204. It is thus a core proceeding under 28 U.S.C. § 157 and under the Supreme Court's decision in *Northern Pipeline.*

■ Because the court finds that Judge Schwartzberg's ruling was in connection with a core proceeding, the court will apply the clearly erroneous standard to this appeal.[8] Under the clearly erroneous standard, the reviewing court is required to search the entire record, *In re Osborne, supra,* 42 B.R. at 994, but will reverse the lower court only if it "is left with the definite and firm conviction that a mistake has been committed," *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). This formulation recently has been clarified by the Supreme Court:

> If the [lower] court's account of the evidence is plausible in light of the record viewed in its entirety, the [reviewing court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice cannot be clearly erroneous.

*Anderson v. City of Bessemer City, N.C.,* — U.S. ——, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). This deferential standard applies "even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts." *Id.* With these principles in mind, the court will consider the merits of the Montmartco appeal.

c. *The Bankruptcy Court's Orders of Attorney's Fees Against Montmartco.*

It is well established that trial courts, including bankruptcy courts, have the in-

---

**8.** Both Montmartco and the trustee-in-possession agree that the clearly erroneous standard applies to this appeal. Glatzer contends that the court should not apply the clearly erroneous standard because the bankruptcy court rendered its decision during the period between the Supreme Court's decision in *Northern Pipeline* in 1982 and amendments to the bankruptcy code in 1984. Glatzer surmises that "[t]he Bankruptcy Court may have felt that it had no choice but to tread a conservative line and deny fees to Glatzer." Brief of Appellant Glatzer at 21. There is no basis in the record for a finding that the bankruptcy judge acted "conservatively" or abused his discretion because of the uncertain status of the bankruptcy courts.

herent power to sanction attorneys for abusive litigation practices. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–67, 100 S.Ct. 2455, 2463–65, 65 L.Ed.2d 488 (1980); *see In re 2218 Bluebird Ltd. Partnership*, 41 B.R. 540, 544 (Bankr.S.D.Cal. 1984); *In re Miller*, 14 B.R. 443, 446–48 (Bankr. E.D.N.Y.1981).[9] The Second Circuit has held that in order to award attorney's fees, there must be " 'clear evidence' that the challenged actions 'are entirely without color and [are taken] for reasons of harrassment and delay or for other improper purposes.' " *Weinberger v. Kendrick*, 698 F.2d 61, 80 (2d Cir.1982) (quoting *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1088 (2d Cir.1977)). "A claim is colorable, for the purpose of the bad faith exception, when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim. The question is whether a reasonable attorney could have concluded that facts supporting the claim *might be established,* not whether such facts actually *had been established.*" *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir.1980) (emphasis in original). The bankruptcy judge recognized these standards as applying to his determination on attorney's fees. *In re Emergency Beacon Corp., su-*pra, 27 B.R. at 762. The court finds, however, that the bankruptcy judge misapplied these standards with respect to the certificate of indebtedness litigation.

1. *The Certificate of Indebtedness Litigation.*

Judge Schwartzberg sanctioned Montmartco because he found that its appeals of his order vacating the authorization of the certificate of indebtedness were "in bad faith, tantamount to impeding the administration of the case and ... without any legal or factual support." 27 B.R. at 763. He specifically ruled, however, that he was not imposing sanctions against Montmartco for the submission of the *ex parte* order which provided for the certificate of indebtedness. He found that while "Montmartco was not an innocent and passive third party beneficiary of the Scappatura-led debtor's conduct [in submitting the improper *ex parte* order]," the order was submitted by EBC's counsel on its own behalf. The bankruptcy court, therefore, held that "the trustee in possession may not charge Montmartco for any time spent by the trustee in possession's attorney in connection with his original application before this court to expunge the improper ex parte order submitted by counsel for EBC." 27 B.R. at

**9.** Montmartco concedes that the bankruptcy court has the inherent power to impose attorney's fees. Brief of Montmartco at 47 n. *.

The bankruptcy court relied on this inherent power, rather than statutory grant of power in 28 U.S.C. § 1927. The court stated that because Section 1927 is penal in nature, it could not be applied retroactively to conduct complained of prior to its enactment, effective September 12, 1980. *In re Emergency Beacon Corp., supra,* 27 B.R. at 770. The court found:

the strategy and direction for going forward with the two appeals to prevent the rectification of a mistake regarding the improper issuance of the certificate of indebtedness was formulated and activated by Montmartco long before its present counsel came into this case. Therefore, there is no justification for imposing any portion of the allowable attorney's fees on Montmartco's present counsel in so far as the certificate of indebtedness issue is concerned. Montmartco should shoulder full responsibility for the allowance of these attorney's fees.

*Id.* With respect to the frivolous motion to dismiss the reinstituted Chapter XI proceeding, the bankruptcy court found that these actions occurred after the effective date of Section 1927. The bankruptcy court, however, determined that attorney's fees under Section 1927 were not appropriate because "counsel for Montmartco was then relatively new to this case when he commenced the motion to dismiss on December 23, 1980." The bankruptcy court also noted:

When the District Court admonished counsel not to proceed further because his position 'was lacking in substantive merit whatever,' counsel for Montmartco complied and discontinued any further efforts to dismiss the reinstituted Chapter XI case. In view of the fact that this court will permit the trustee in possession to recover his attorney's fees from the escrowed mortgage funds belonging to Montmartco, the party primarily responsible for the strategy in this case, there is no reason why Montmartco's present counsel should be called upon to assume personally any portion of the award and thereby relieve Montmartco of the ultimate responsibility.

*Id.* at 771. These findings are not clearly erroneous.

763. Thus, the bankruptcy judge sanctioned Montmartco, not for actions taken or motions filed in the bankruptcy court, but for appeals filed in higher courts.

Based on Judge Schwartzberg's findings, this court may only uphold the sanction order if it finds that the bankruptcy court's determination that Montmartco's appeals had no colorable basis and were filed in bad faith is not clearly erroneous. Montmartco contends that a trial court lacks the authority to award items which the higher courts had not awarded as appellate costs. In support of this argument Montmartco cites *Globe Indemnity Co. v. Pugent Sound Co.*, 154 F.2d 249 (2d Cir.1946). There, the Court of Appeals for the Second Circuit stated: "Our judgment on … appeal did not award appellate costs, and the district court was without power to modify our judgment by awarding items which we refused to award as appellate costs." *Id.* at 251. In *Pugent Sound*, however, the Court of Appeals had considered the issue of attorney's fees and costs in its original judgment. Under such circumstances, principles of law of the case, estoppel and judicial comity precluded the district court from reconsidering the issue of attorney's fees and costs. In this case, however, the court of appeals has not entered any judgment. *Compare Marcum v. Dahl*, 535 F.Supp. 48, 49 (W.D.Okl.1981) (where court of appeals affirmed district court's final judgment notwithstanding the verdict and filed judgment in favor of defendants, district court lacked authority to amend or alter that judgment); *Skeoch v. Ottley*, 278 F.Supp. 314, 316 (D.V.I.1968) (where appellate court had entered judgment with respect to costs incurred before that court, district court lacked the power to modify or supplement that judgment). The appeals were interlocutory and thus the bankruptcy court retained jurisdiction of the case. In addition, because the court of appeals did not address the issue of costs on appeal, it appears that the trustee did not seek an award of attorney's fees before the court of appeals.

This court rejects Montmartco's contention that a trial court lacks jurisdiction to impose sanctions for the filing of frivolous appeals. Although appellate courts certainly have the power to impose sanctions for the filing of frivolous appeals, 28 U.S.C. § 1912; Fed.R.App.P. 38 & 46(c),[10] there are apt to be instances where the appellate court will overlook its power in this regard. Often the trial court, which has had the opportunity to observe the litigants' behavior over a number of years, is in a better position to determine the motives behind the filing of an appeal. The frivolous appeal might be the latest link in a pattern of harassment that the trial judge is most familiar with. Moreover, in cases such as this, which require further litigation after the appeals are resolved, the trial court has the stronger interest in disciplining the litigants so that final resolution of the proceedings is not needlessly delayed. This is particularly true in bankruptcy cases, where there is an additional appellate level, i.e., the district court, and where there are a multitude of "collateral orders" that might be subject to pre-final judgment appellate review.

The fact that a trial judge has issued an order does not mean that he lacks the capacity to determine whether an appeal of that order is frivolous. District courts are often called upon to determine the merits of an appeal, even before the appellate court has adjudicated the merits. *See Coppedge v. United States*, 369 U.S. 438, 443–45, 82 S.Ct. 917, 919–21, 8 L.Ed.2d 21 (1962) (discussing district court's authority under 28 U.S.C. § 1915(a) to deny leave to appeal *in forma pauperis* if district court determines that appeal is not taken in good faith); *United States v. Dunbar*, 611 F.2d 985, 988 (5th Cir.1980) (if district court determines that appeal of denial of motion to dismiss based on double jeopardy is friv-

---

10. In addition, strict compliance by appellate courts with the final judgment rule "reduces the ability of litigants to harass opponents and to clog the courts through a succession of costly and time-consuming appeals." *Flanagan v. United States*, 465 U.S. 259, 104 S.Ct. 1051, 1054, 79 L.Ed.2d 288 (1984).

olous, it may proceed to trial, regardless of pendency of appeal); 18 U.S.C. § 3143 (district court must detain criminal defendant pending appeal, unless it determines, *inter alia,* "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial"); 28 U.S.C. § 1292 (district court certification of interlocutory order for appeal upon a determination that "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."). Such determinations are made easier once the appellate court has discussed the merits of the appeal. Accordingly, this court holds that where the appellate court does not consider the issue of sanctions and the appeal is interlocutory, the trial court is not barred from considering the issue on remand. *See United States v. Blodgett,* 709 F.2d 608, 610 (9th Cir.1983) ("we conclude that the district court had the power to sanction counsel for filing a frivolous appeal in bad faith, and that filing solely for purposes of delay constitutes bad faith.").

■■■ Although the trial court has the power to sanction an attorney for the filing of frivolous appeals, such power should only be used in extraordinary circumstances, because of the danger of placing a chill on the litigants' right to appeal. In *Cheng v. GAF Corp.,* 713 F.2d 886, 892 (2d Cir. 1983), *vacated on other grounds,* —— U.S. ——, 105 S.Ct. 3493, 87 L.Ed.2d 626 (1985), the Court of Appeals for the Second Circuit disapproved of the imposition of sanctions by a district court for the filing

of petitions in reviewing courts. The court stated:

We are also surprised by the district judge's willingness to sanction appellant's attorney, not for a motion made in the district court, but for appeals taken to this court and the Supreme Court. A rule permitting a district court to sanction an attorney for appealing an adverse ruling might deter even a courageous lawyer from seeking the reversal of a district court decision.

*Id.*[11] *See also Overnite Transport Co. v. Chicago Indus. Tire Co.,* 697 F.2d 789, 795 (7th Cir.1983) (sanctioning an attorney for filing an appeal that had "an arguable factual basis ... would have a profound chilling effect upon litigants and would further interfere with the presentation of meritorious legal questions to [the court of appeals].").[12] This concern is sufficiently addressed by the trial court's strict adherence to the "bad faith" standards cited above, for there exists no right to file frivolous appeals. If the district court finds that the appeal was "truly unmeritorious and frivolous," *id.,* and filed solely for the purpose of delay or harrassment, *United States v. Blodgett,* 709 F.2d 608, 610 (9th Cir.1983), then it may impose sanctions for the filing of such appeal.

■■■ In this case, the bankruptcy judge did not adhere to the standards of *Nemeroff v. Abelson,* 620 F.2d 339, 348 (2d Cir. 1980). The judge stated that "*any* further conduct by Montmartco after this court's ruling to prevent the rectification of the mistaken authorization for the certificate of indebtedness was in bad faith." *In re Emergency Beacon Corp., supra,* 27 B.R. at 763 (emphasis supplied). In effect, the bankruptcy judge was asserting that Mont-

---

**11.** The court of appeals did not hold, however, that district courts lack jurisdiction to sanction a litigant for the filing of a frivolous appeal. Moreover, the conduct sanctioned in *GAF v. Cheng* was the filing of a petition for a writ of mandamus, which the court of appeals found counsel was "ethically obliged" to file. 713 F.2d at 891.

**12.** There is also the danger of judge-shopping. The prevailing appellant litigant might perceive

the trial court judge, whose order was appealed, more amenable to awarding the attorney's fees and expenses of the appeal. The trial court judge should obtain some explanation as to why the appellee did not apply to the appellate court(s) for the costs of his appeal(s) and why, under the circumstances of the case, the trial court is the better forum to hear the attorney's fee petition.

martco had no right to appeal his countermand of the 1976 order. He did not examine the merits of the appeal or the questions raised on appeal, but stated in conclusory fashion that "any" further efforts by Montmartco to reestablish its certificate of indebtedness "was without legal or factual support." The bankruptcy judge's ruling, therefore, was without a sufficient factual basis and was an abuse of discretion.

On appeal to the district court and the court of appeals, Montmartco argued that the bankruptcy court lacked the authority to modify the 1976 order and that, in any event, Montmartco had made a sufficient showing for the issuance of the certificate of indebtedness. The fact that all agreed that the bankruptcy judge never intended to issue the certificate of indebtedness, does not mean that Montmartco had no colorable claim for challenging its countermand. The record before the court of appeals on the certificate of indebtedness indicates that the issues involved were not cut and dried. The court of appeals' discussion of Montmartco's arguments on appeal consumed approximately four pages of the federal reporter. *In re Emergency Beacon Corp.*, 666 F.2d 754, 757–61 (2d Cir.1981). Moreover, Glatzer has directed this court to a passage in the oral argument before the court of appeals that demonstrates the court of appeals' difficulty with the issues in this case. Brief of Appellant Glatzer at 40. At oral argument, Judge Oakes stated that use of Rule 60(b)(6) of the Federal Rules of Civil Procedure as support for the bankruptcy judge's authority to vacate the certificate of indebtedness was "a long shot." It was based on this "long shot," however, that the court of appeals sustained the bankruptcy court's ruling. *In re Emergency Beacon Corp.*, *supra*, 666 F.2d at 759–60. The bankruptcy judge also failed to consider the merits of the appeal or why the appellate court did not exercise its power to sanction Montmartco, *sua sponte*, for the filing of a frivolous appeal. As the Supreme Court has stated, "[s]imply because the facts were found against the [litigant] does not by itself prove that threshold of irresponsi-ble conduct for which a penalty assessment would be justified." *Runyon v. McCrary*, 427 U.S. 160, 183, 96 S.Ct. 2586, 2601, 49 L.Ed.2d 415 (1976).

Moreover, the bankruptcy judge did not specifically find that the appeals were filed "for reasons of harassment and delay or for other improper purposes." *Nemoroff v. Abelson, supra*, 620 F.2d at 348. Although the bankruptcy judge stated that Montmartco's actions were "tantamount to impeding the administration of this case," 27 B.R. at 763, he did not consider the fact that Montmartco stood to lose approximately $217,000.00 from the denial of the certificate of indebtedness.

Based on the record before this court, the bankruptcy judge did not correctly apply the standards for finding that Montmartco's appeal of the 1978 order was frivolous and filed for the purpose of harassment or delay. Accordingly, his award of attorney's fees is reversed.

2. *The Frivolous Motion to Dismiss the Reinstituted Chapter XI Proceeding.*

■ Montmartco offers three reasons for reversing the bankruptcy judge's award of fees to the trustee-in-possession incurred in connection with the frivolous motion to dismiss the reinstituted Chapter XI proceeding. Brief of Appellee Montmartco at 51. Montmartco contends that "the Bankruptcy Court's decision to award attorney's fees in connection with the certificate of indebtedness litigation so infused the remainder of the decision that the decision should be remanded to the Bankruptcy Court to consider whether or not to deny any fees in light of reversal of the finding that the certificate of indebtedness litigation was in bad faith." Although this court has found that Judge Schwartzberg's award with respect to the certificate of indebtedness litigation is clearly erroneous, this does not serve as a basis for upsetting his award with respect to Montmartco's frivolous motion to dismiss. The bankruptcy judge did not refer to Montmartco's "bad faith" in the certificate of indebtedness litigation in rendering his award for

the frivolous motion, nor is there any basis in the record for a finding that he was influenced by that ruling. The record bears out the bankruptcy judge's ability to consider each allegation of bad faith separately, without being influenced by other findings of bad faith.

▌ Montmartco also contends that at least that portion of the bankruptcy court's order that required Montmartco to pay the trustee-in-possession's fees incurred in defending the appeal of the bankruptcy court's denial of the motion to dismiss should be reversed, based on the same reasoning that led this court to reverse the fee award in the certificate of indebtedness litigation. This court finds, however, that the bankruptcy court's award of fees for the appeal of the denial of the motion to dismiss is not clearly erroneous. The bankruptcy court noted that on September 21, 1981, when the district court sustained the bankruptcy court's ruling, the district court stated that Montmartco's position " 'was lacking in any substantive merit whatever.' " [13] *In re Emergency Beacon Corp.,* *supra,* 27 B.R. at 771. The bankruptcy court also found that the litigation was "vexatious," *id.* at 765, a finding that is not clearly erroneous. Accordingly, in this instance, Judge Schwartzberg's holding that Montmartco's appeal was without color and filed for the purpose of harassment is supported by the record. The fact that the district court decided in its discretion not to award attorney's fees for the filing of the frivolous appeal did not preclude the bank-

ruptcy judge from exercising his own discretion on remand in the interests of the estate. *See* discussion *supra.*

▌ Finally, Montmartco contends that the initial $500.00 fine was sufficient and the bankruptcy judge provided no reason for augmenting the sanction. Based on the record, however, it is clear that Judge Schwartzberg increased the sanction to compensate the trustee-in-possession for having to oppose the motion to dismiss and the subsequent appeal. The bankruptcy judge has wide discretion in deciding what sanction to impose for frivolous practice. He is entitled to revise his sanctions and to make all parties whole. The bankruptcy judge's ruling in this respect is not clearly erroneous. Accordingly, the bankruptcy court's order of sanctions against Montmartco for its conduct relating to the frivolous motion to dismiss the reinstituted Chapter XI proceeding is affirmed.

## II. *The Glatzer Appeal, 83 Civ. 3643.* [14]

a. *The Certificate of Indebtedness Litigation and the Motion to Dismiss the Second Chapter XI Petition.*

▌ The bankruptcy judge found that Montmartco did not commit any misconduct before the bankruptcy court, either in submitting the improper *ex parte* order in 1976 or in arguing before the bankruptcy court that the 1976 order should not be expunged. 27 B.R. at 762–63. On appeal,

---

**13.** Judge Goettel's comments on the issue of sanctions were as follows:

I am sorely tempted to add additional fees on this appeal. However, I'm not going to do it, but if there is an appeal to the Court of Appeals I would be very surprised if they did not assess substantial fees on any further appeals of this matter which, so far as I'm concerned, is lacking in any substantive merit whatever, and I believe is taken for purposes of further prolonging these proceedings.

Glatzer then asked the judge to consider remanding the issue of fees to the bankruptcy judge. Judge Goettel responded:

He [the bankruptcy judge] still has a lot of jurisdiction left to him in this matter before it is ultimately wound up and when he gets the

matter back from the pending appeal in the Court of Appeals he can take any action he chooses to take.

I'm not assessing fees at this moment because I think the assessment of fees would compel a futher appeal and I want to avoid that. If there is a further appeal I have a strong suspicion that unless the Court of Appeals thinks I'm badly off base here they are going to assess much more substantial fees than did Judge Schwartzberg.

**14.** This court has jurisdiction over this action for the same reasons it has jurisdiction over the Montmartco appeal. *See* discussion *supra.* In addition, the clearly erroneous standard applies to this appeal as well.

Glatzer seeks reversal of this finding.[15] This finding, however, is not clearly erroneous and the bankruptcy judge's refusal to sanction Montmartco for such behavior is within his discretion. The bankruptcy judge carefully examined Montmartco's role in the submission of the 1976 order and found that Montmartco "did not openly argue for the issuance of the certificate of indebtedness, nor was there any evidence that Montmartco had any involvement in the preparation of the improper *ex parte* order, ..." *Id.* at 763. The bankruptcy judge further found that although Montmartco "was not an innocent and passive third party beneficiary of the Scappatura-led debtor's conduct [in submitting the 1976 order]," Montmartco did not actually submit the order, and thus should not have to reimburse the trustee-in-possession for attorney's fees incurred in expunging the improper *ex parte* order. *Id.* This court finds Montmartco's role with respect to the submission *ex parte* order, as outlined by the bankruptcy judge, suspicious at best. However, under *Anderson v. City of Bessemer City, N.C.,* — U.S. —, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985), this court may not reverse the bankruptcy judge's refusal to exercise his discretionary power to sanction Montmartco.[16]

The bankruptcy judge found that Montmartco acted in bad faith in appealing the modification of the 1976 order, although he refused to award Glatzer any compensation. This court, however, has already reversed the bankruptcy judge's determination that Montmartco's appeals were filed in bad faith. Because there is no basis on the record for sanctioning Montmartco with respect to the certificate of indebtedness litigation, the bankruptcy judge's denial of Glatzer's application for attorney's fees incurred during the certificate of indebtedness litigation must be affirmed.

The bankruptcy judge also denied Glatzer's petition based on Glatzer's status as an intervenor. He found that "although Mr. Glatzer may have voluntarily offered his time and assistance to trustee's counsel during the course of the certificate litigation," he was not entitled to an award of attorney's fees, because "the debtor, EBC, the entity directly affected by the certificate, was adequately represented by trustee's counsel." 27 B.R. at 769. Glatzer contends that the bankruptcy court should have granted his application for fees because he has minimized the amount of time the trustee-in-possession had to spend in opposition to Montmartco's motions and thus reduced the estate's exposure to attorney's fees. Although the court need not address this issue with respect to the certificate of indebtedness litigation, Glatzer also has raised his right to reimbursement

---

**15.** The trustee-in-possession has not sought reversal of the bankruptcy judge's refusal to sanction Montmartco for the role it played in the filing of the *ex parte* order and for its position before the bankruptcy court that the 1976 order should not be expunged.

**16.** Under *Anderson v. City of Bessemer City, N.C., supra,* 105 S.Ct. at 1512, the clearly erroneous standard requires affirmance "if the [lower] court's account of the evidence is plausible in light of the record viewed in its entirety." The bankruptcy judge's conclusion that Montmartco's conduct in submitting the improper *ex parte* order and later in arguing that it should not be expunged is barely "plausible." Based on the record in this case, a reasonable inference is that Montmartco played a sufficient role in filing the improper *ex parte* order to warrant the imposition of sanctions. As the bankruptcy judge noted, "when EBC's erstwhile counsel submitted to the court the ex parte order ..., Montmartco was then holding 28% of EBC's common stock, EBC was indebted to Montmartco for

$275,000.00, and Jack Polish, [who had previously been EBC's secretary, during which time he helped to complete the pre-petition loan to Montmartco], was counsel for other corporations affiliated with Montmartco." 27 B.R. at 763. Moreover, as the bankruptcy judge also noted, EBC gained little or nothing from issuing a certificate of indebtedness to Montmartco. *Id.*

Despite this evidence, the bankruptcy judge determined that "a total disregard of the separate corporate entities" was not warranted, because the *ex parte* order in question was "submitted by counsel for EBC on its [EBC's] behalf," at a time when Montmartco was represented by independent counsel. *Id.* Although this court might very well have arrived at a different conclusion had it been sitting as the trier of fact, the bankruptcy judge's view of the evidence is "plausible" and "permissible," and thus may not be reversed. *Anderson v. City of Bessemer City, N.C., supra,* 105 S.Ct. at 1512.

for attorney's fees incurred in opposing Montmartco's frivolous motion to dismiss the second Chapter XI petition.

■■■■ Glatzer is correct that an intervenor is a party to the litigation and may be awarded attorney's fees. *United States v. Board of Education of Waterbury Conn.*, 605 F.2d 573, 577 (2d Cir.1979); *Keyes v. School District No. 1*, 439 F.Supp. 393, 400 (D.Colo.1977). However, "[a]wards to intervenors should not be granted unless the intervenor plays a significant role in the litigation." *Grove v. Mead School District No. 354*, 753 F.2d 1528, 1535 (9th Cir.1985); *Donnell v. United States*, 682 F.2d 240, 247–48 (D.C.Cir. 1982), *cert. denied*, 459 U.S. 1204, 103 S.Ct. 1190, 75 L.Ed.2d 436 (1983). Any such award rests in the trial court's discretion. *Grove v. Mead School District No. 354*, *supra*, 753 F.2d at 1535.

■■■■ The bankruptcy court's finding that "trustee's counsel amply protected the debtor's interests," with respect to the certificate of indebtedness litigation, 27 B.R. at 769, is tantamount to a finding that Glatzer did not play a significant role in the certificate litigation. The bankruptcy judge made no findings concerning the role played by Glatzer in opposing the frivolous motion to dismiss the Chapter XI. Although Glatzer has presented evidence to this court of the significant role he played during the certificate litigation, he has not given the court any indication of any "significant" role played during the litigation involving the reinstituted Chapter XI proceeding. The fact that he may have saved the estate money in attorney's fees is not dispositive, because, as a shareholder, such saving eventually would inure to his own benefit. Accordingly, on the record presented, there is no basis for awarding attorney's fees to Glatzer for his efforts during the certificate litigation and the litigation concerning the reinstituted Chapter XI.

b. *The Automobiles Litigation.*

■■■ With respect to the automobiles litigation, the bankruptcy judge found:

The question that had existed regarding the certificates of title and the issue as to whether a sale had actually occurred in 1974, were legitimate assertions on Montmartco's part and constituted a reasonable basis for its belief that its lien claim against the vehicles would be upheld. Montmartco's lien claim was therefore colorable, and not in bad faith. 27 B.R. at 764. Although these findings were made in the context of the trustee-in-possession's application for attorney's fees, they necessarily apply to Glatzer's application. *See supra* note 2. Judge Schwartzberg's ruling is not clearly erroneous.

Much of Glatzer's argument pertains to certain statements made by the bankruptcy judge during the pendency of the appeals in the automobiles litigation. The bankruptcy judge repeatedly admonished the parties that it would award counsel fees to the prevailing party after the Second Circuit ruled on the issue of ownership of the automobiles. After Glatzer prevailed on appeal, however, Judge Schwartzberg denied his application for attorney's fees. Glatzer now seeks to have the bankruptcy judge deliver on his earlier promise/threat.

■■■■ The bankruptcy judge correctly held that his statements regarding attorney's fees could not be characterized as stipulations, because there is "no basis in the record to support the proposition that there were formal stipulations made on the record between *Montmartco and Glatzer* with regard to agreeing to pay each other's attorney's fees, conditioned on who prevailed on appeal." 27 B.R. at 769. Moreover, even if there had been such a stipulation, the bankruptcy judge would not have been bound to enforce it. *See Sharjah Investment Co. (UK) Ltd. v. P.C. Telemart, Inc.*, 107 F.R.D. 81, 82 (S.D.N.Y. 1985); 27 B.R. at 769 and cases cited therein. The bankruptcy judge went on to state that Glatzer's application for attorney's fees was denied because of his *pro se* status, 27 B.R. at 770; however, in view of the bankruptcy judge's earlier finding that Montmartco's conduct during the automo-

biles litigation was not in bad faith, *id.* at 764, it would have been an abuse of discretion to grant Glatzer's application, even if Glatzer had retained counsel during the automobiles litigation.

 On appeal, Glatzer contends that Judge Schwartzberg's statements constitute "orders," and thus have binding effect. However, even if Judge Schwartzberg's admonitions can be construed as orders, he clearly had the authority and, in this case, the obligation to change his mind and to vacate such an order. The doctrine of law of the case does not bar a trial court from altering decisions regarding discretionary matters such as attorney's fees, particularly when adhering to the previous order would be error. *See Strama v. Peterson*, 561 F.Supp. 997, 1000 (N.D.Ill. 1983). Moreover, the court does not find any injustice to Glatzer in the bankruptcy judge's failure to abide by his originally stated intentions. Although Glatzer contends that he and Montmartco "relied" on the bankruptcy judge's statements, Brief of Appellant Glatzer at 41, Glatzer does not state that he would not have appealed in the automobiles litigation but for the judge's false incentive of attorney's fees. Nor would this court find such an assertion credible. The bankruptcy judge clearly directed these threats to Glatzer, because the bankruptcy judge felt his decision on the automobiles was correct and that Glatzer's attempts to reverse him were frivolous. *See id.* at 42; 27 B.R. at 769 ("With the understanding that this court was prepared to award substantial attorney's fees, Mr. Glatzer accepted the risk of being charged with Montmartco's attorney's fees, and prosecuted his appeal. Quite unexpectedly, he prevailed.").[17] Accordingly, the bankruptcy court's denial of Glatzer's application for attorney's fees in connection with the automobiles litigation is affirmed.

c. *Counsel fees to Glatzer as a* pro se *litigant.*

The bankruptcy judge undertook an extensive analysis on the impropriety of awarding attorney's fees to *pro se* litigants. 27 B.R. at 766–68. The bankruptcy judge's denial of Glatzer's application for attorney's fees is sustainable on the grounds stated above. However, in view of the possibility that the issue of Glatzer's attorney's fees will arise again during the course of this bankruptcy litigation, the court will address this issue.

Judge Schwartzberg examined the case law on attorney's fees to *pro se* litigants in cases brought under the Freedom of Information Act (FOIA), the Civil Rights Act, the Privacy Act and the Truth in Lending Act. These statutes specifically authorize the award of attorney's fees to prevailing complainants. However, as the bankruptcy judge correctly noted, the "overwhelming majority" of United States Circuit Courts have refused to award attorney's fees to *pro se* plaintiffs. 27 B.R. at 766–67. The reasoning of these courts has varied, but consistent themes prevail. Some courts have based their decisions on the applicable statutory language and legislative history. *See, e.g., Wolfel v. United States*, 711 F.2d 66, 68 (6th Cir.1983); *Barrett v. Bureau of Customs*, 651 F.2d 1087, 1089 (5th Cir.1981), *cert. denied*, 455 U.S. 950, 102 S.Ct. 1454, 71 L.Ed.2d 665 (1982). Other courts have reasoned that Congress' policy in enacting these attorney's fee provisions was to encourage litigants to hire attorneys, and that awarding attorney's fees to *pro se* litigants would not further the goals of the statute at issue. *See, e.g., DeBold v. Stimson*, 735 F.2d 1037, 1043 (7th Cir.1984); *White v. Arlen Realty & Development Corp.*, 614 F.2d 387 (4th Cir. 1980), *cert. denied*, 447 U.S. 923, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980). Courts have also been reluctant to award attorney's fees to *pro se* litigants because of the lack of a "meaningful standard for calculating the amount of such an award." *Crooker v. United States Dep't of Justice*, 632 F.2d 916, 921 (1st Cir.1980); *DeBold v. Stimson*,

---

**17.** This court is sympathetic and can readily understand that the barrage of appeals in this case may have strained the bankruptcy judge's patience. However, the bankruptcy judge should exercise restraint, thus to avoid the appearance of chilling the litigants' right to appeal.

*supra,* 735 F.2d at 1043. Further, the court in *Cunningham v. F.B.I.,* 664 F.2d 383, 386 (3d Cir.1981), observed that because the *pro se* litigant has not spent money for the services of an attorney, he requires no compensation. *See* 27 B.R. at 767.

Although the reasoning of these cases applies to this case, none of the above cited cases address the propriety of compensating a *pro se* litigant pursuant to the court's inherent power to sanction bad faith conduct. The bankruptcy judge stated that the lack of statutory authorization for the award of attorney's fees precluded Glatzer's application:

> It cannot be over emphasized that in the instant case there is no statutory authorization for fees to bring the controversy within that narrow exception to the American Rule. Indeed, even if all of the foregoing Circuit decisions unanimously approved *pro se* counsel fees for non-attorneys pursuant to the various statutes involved in these cases, the rulings would not be instructive in the present situation, where Mr. Glatzer is requesting attorney fees without any statutory authorization to ease him over the American hurdle.

27 B.R. at 768. Glatzer, however, correctly points out that there are two avenues to "ease him over the American Rule." First, 28 U.S.C. § 1927 specifically provides for attorney's fees for vexatious conduct during the course of litigation.[18] Second, as discussed previously, the court has the inherent authority to sanction a party for bad faith conduct. Thus, the bankruptcy court's statement that there is no basis for finding an exception to the American Rule with respect to Glatzer is incorrect.

 Use of the term "attorney's fees" to describe compensation to a non-attorney

litigant is a misnomer. As the Court of Appeals for the Seventh Circuit has stated:

> Attorney means attorney. We have no doubt that Blue Cross/Blue Shield would balk at a request for doctor fees from a person who removed his own appendix, or more realitically, a request for dental fees from someone who extracted his own tooth. No one would be entitled to reimbursement for therapist fees for attempts at self-improvement or for finding solutions to one's own problems. Rebuilding and repairing one's own car after an accident might be spiritually rewarding, however, we doubt very much if one's insurance company would honor a demand for mechanic fees. Myriad examples leap to mind that need not be repeated here. Suffice it to say that, although a pro se litigant often times performs exactly the same functions as a lawyer might perform in representing a client, without a degree and admission to the bar a pro se litigant is not entitled to collect attorney fees.

*DeBold v. Stimson, supra,* 735 F.2d at 1042–43.[19] The fact, however, that a *pro se* litigant is not entitled to "attorney's fees," does not mean that he is not entitled to some form of compensation for his adversary's misconduct. The *pro se* litigant should be allowed his "litigation costs reasonably incurred." *Id.* at 1043. This allows compensation for bad faith conduct without the danger of a windfall and without the pitfalls of trying to assess the value of a *pro se* litigant's efforts.

 Glatzer contends that as part of his "costs," he should be reimbursed for loss of "income-producing" activity. This contention is denied for two reasons. First, Glatzer's claim for loss in this regard is over $1 million, which is excessive and unsupported. Second, the policy considera-

---

**18.** The bankruptcy judge found that sanctions against Montmartco's counsel pursuant to 28 U.S.C. § 1927 were not warranted in this case for reasons unrelated to Glatzer's *pro se* status. *See supra* note 9.

**19.** Glatzer has not cited the court to any non-FOIA cases where attorney's fees were granted

to a *pro se* litigant. In the state court cases that have awarded attorney's fees to *pro se* litigants, the litigant was himself an attorney. *See, e.g., Winer v. Jonal Corp.,* 169 Mont. 247, 545 P.2d 1094 (1976); *Wells v. Whinery,* 34 Mich.App. 626, 192 N.W.2d 81 (1971). Glatzer, however, is not an attorney.

tions present in the FOIA cases is absent here. *Ellis v. Cassidy,* 625 F.2d 227, 230 n. 2 (9th Cir.1980). *Compare Crooker v. United States Department of Treasury,* 634 F.2d 48, 49 (2d Cir.1980) ("we do not believe that Congress [in enacting the FOIA] intended to permit an award of attorney's fees to *pro se* litigants like Crooker who have made no showing that prosecuting their lawsuits caused them to divert any of their time from income-producing activity."). In this action, as in all cases, the court has an inherent interest in encouraging the parties to obtain legal representation. If Glatzer had hired an attorney he would have been able to devote more of his energies to income producing activity. But having chosen to proceed *pro se,*[20] he also chooses to sacrifice the fuller pursuit of income producing activity. The court should not allow Glatzer's participation in this case to become his "income producing activity."

## CONCLUSION

The decision of the bankruptcy court is affirmed in part and reversed in part. The sanction against Montmartco for its appeals in the certificate of indebtedness litigation is reversed. As to all other rulings contested herein, the bankruptcy court is affirmed.

SO ORDERED.

---

**20.** Glatzer contends that he originally hired Stroock, Stroock and Lavan to represent him, but that Montmartco's abusive tactics forced him to proceed *pro se.* Brief of Appellant Glatzer at 48. The fact that Glatzer cannot afford the services of a large New York City corporate law firm does not mean he cannot afford more modest counsel. Although the court is "mindful that in today's marketplace, a litigant with a meritorious claim may not always be able to engage an attorney even with the possibility of attorney's fees," *DeBold v. Stimson, supra,* 735 F.2d at 1043, Glatzer has made no showing that he cannot retain any counsel. Certainly, a litigant who voluntarily chooses not to retain counsel should not be rewarded for such a decision by an award of attorney's fees.