**In re X–CEL, INC. d/b/a Sizzler Family Steak House, Debtor.**

**No. 84 C 3274.**

United States District Court,
N.D. Illinois, E.D.

Nov. 19, 1984.

David M. Missner, Schwartz, Cooper, Kolb & Gaynor, Chicago, Ill., for appellee, A. Eicoff Co.

Louis W. Levit, Levit & Mason, Glenn R. Heyman, Dannen, Crane, Heyman & Haas, Chicago, Ill. for debtor-appellant, X–Cel, Inc.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This is an appeal from an order entered by the Bankruptcy Court for the Northern District of Illinois allowing a disputed claim in a case pending under Chapter 11 of the Bankruptcy Code. The claimant, A. Eicoff & Company ("Eicoff"), asserts that it is due payment for advertising services it performed for the debtor, X-Cel, Inc. ("X-Cel"). X-Cel is an Illinois corporation which formerly operated several Sizzler Steak House restaurant franchises in the Chicago metropolitan area. During the time relevant to the parties' dispute, three other corporations also held Sizzler franchises in or near Chicago. X-Cel and these other franchisees began to purchase advertising as a group, and they entered into a formal agreement to advertise together on August 26, 1981. This group then engaged Eicoff as its advertising agency to purchase newspaper space and television time in which to run Sizzler advertisements. At issue in this case is X-Cel's liability for a share of the costs of the advertising for the Sizzler "steak and all you can eat shrimp" campaign of the summer of 1982.

After holding an evidentiary hearing and examining the documentary evidence and memoranda submitted by the parties, the bankruptcy judge allowed Eicoff's claim in full with interest. X-Cel appeals from that decision. For the reasons set forth below, the order of the bankruptcy court is affirmed.

### I.

The parties disagree first about the proper scope of review that this Court should apply to the bankruptcy court's decision. X-Cel claims that its appeal is governed by one of the Emergency Rules adopted by the District Court for the Northern District of Illinois on December 20, 1982. Emergency Rule E(2)(b) provides:

> In conducting review, the district judge may hold a hearing and may receive such evidence as appropriate and may accept, reject, or modify, in whole or in part, the order or judgment of the bankruptcy judge, and need give no deference to the findings of the bankruptcy judge. At the conclusion of the review, the district judge shall enter an appropriate order or judgment.

Eicoff, on the other hand, contends that the traditional standard of review set forth in Bankruptcy Rule 8013 (formerly Rule 810) should be applied. Rule 8013 states:

> On an appeal the district court ... may affirm, modify or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

We agree with Eicoff that Bankruptcy Rule 8013, rather than Emergency Rule E(2)(b), governs this appeal. It is true that the Emergency Rules applied generally to this case while it was before the bankruptcy court. However, the Rules are no longer in effect. The first section of the Emergency Rules states clearly that the purpose of the Rules was "to supplement existing law and rules in respect to the authority of the bankruptcy judges of this district to act in bankruptcy cases and proceedings *until Congress enacts appropriate remedial legislation* in response to the Supreme

Court's decision" in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (emphasis added). Such remedial legislation was enacted on July 10, 1984, when the President signed into law the "Bankruptcy Amendments and Federal Judgeship Act of 1984," Pub.L. No. 98–353; 98 Stat. 333. Thus, by their own terms, the Emergency Rules are not in effect any more.[1]

The new amendments to the Bankruptcy Code do not change the standard of review for cases such as this one. To remedy the constitutional infirmities of the bankruptcy court system struck down by the Supreme Court in *Northern Pipeline,* Congress has now drawn a distinction between core and non-core proceedings. Core proceedings include most matters which are integral to the adjudication of bankruptcy or were traditionally before the bankruptcy court. *See* 28 U.S.C. § 157(b)(2). Bankruptcy judges may hear and determine all core proceedings referred to them under § 157; they may also hear non-core proceedings and then submit proposed findings of fact and conclusions of law to the district court.[2] However, nothing in the amendments refers to the district court's scope of review of a bankruptcy judge's decisions in core proceedings. We therefore assume that Congress intended to maintain the clearly erroneous standard of review already established in Bankruptcy Rule 8013.[3]

X-Cel offers a second reason why this Court should review the bankruptcy judge's decision more closely than under the clearly erroneous standard. Instead of drafting his own factual findings and legal conclusions, the bankruptcy judge simply incorporated into his order Eicoff's proposed findings and conclusions. Thus, X-Cel argues, the bankruptcy court's decision is not entitled to even the slightest weight on appeal. This argument is unpersuasive.

The Supreme Court and Seventh Circuit have made it clear that adoption of the prevailing party's findings verbatim and without change does not invalidate the findings. "Those findings, though not the product of the workings of the ... judge's mind, are formally his; they are not to be rejected out-of-hand, and they will stand if supported by evidence." *United States v. El Paso Natural Gas Co.,* 376 U.S. 651, 656, 84 S.Ct. 1044, 1047, 12 L.Ed.2d 12 (1964); *see also Garcia v. Rush-Presbyterian-St. Luke's Medical Center,* 660 F.2d 1217, 1220 (7th Cir.1981). In a series of cases involving this issue, the Seventh Circuit has continued to apply the clearly erroneous standard of review, although it has examined the lower court's findings more critically to determine whether they are clearly erroneous. *See Garcia,* 660 F.2d at 1220; *Photovest Corp. v. Fotomat Corp.,* 606 F.2d 704, 731 (7th Cir.1979), *cert. denied,* 445 U.S. 917, 100 S.Ct. 1278, 63 L.Ed.2d 601 (1980); *Schwerman Trucking Co. v. Gartland Steamship Co.,* 496 F.2d 466, 474–75 (7th Cir.1974); *FS Services, Inc. v. Custom Farm Services, Inc.,* 471 F.2d 671, 676 (7th Cir.1972); *Reese v. Elk-*

---

1. The legislative history of the 1984 amendments to the Bankruptcy Code also demonstrates that the Emergency Rules no longer apply to this case. An analysis of the amendments, appended to the statement of Senator Orrin Hatch, explains that the new legislation was intended to become effective immediately upon enactment and to govern all bankruptcy cases then pending. 130 Cong.Rec. S8891 (daily ed. June 29, 1984).

2. 28 U.S.C. § 157(c)(1) provides that the district court shall enter any final order or judgment in a *non-core* proceeding, after considering the bankruptcy judge's proposals and after reviewing de novo any matters to which a party has properly objected. Thus, the 1984 amendments

shift the responsibility for making final decisions in non-core proceedings from the bankruptcy judge to the district court. Compare this procedure with the statutory provisions governing the reference of pretrial matters to magistrates in 28 U.S.C. § 636.

3. This assumption is buttressed by the provision in 28 U.S.C. § 158(c) that an appeal to a district court "shall be taken in the same manner as appeals in civil proceedings generally are taken to the court of appeals from the district courts...." The provision is consistent with the Advisory Committee's Note to Rule 8013: "This rule accords to the findings of the bankruptcy judge the same weight given the findings of a district judge under Rule 52 F.R.Civ.P."

*hart Welding and Boiler Works, Inc.*, 447 F.2d 517, 520–21 (7th Cir.1971). Accordingly, we have closely examined the bankruptcy court's findings to determine whether they are supported by evidence or are clearly erroneous. In doing so, we have taken into consideration the advantages possessed by the bankruptcy judge in appraising the credibility of witnesses who gave conflicting testimony. *See Schwerman*, 496 F.2d at 474; *Reese*, 447 F.2d at 520–21.

## II.

X-Cel's first substantive argument is that it is not liable to Eicoff because Eicoff placed the advertisements without written authorization from the franchisees, thus breaching the contract. Eicoff, on the other hand, argues that the written authorization provision was included in the contract for the benefit of Eicoff, not the franchisees, and that any written authorization requirement had been waived by the franchisees. Indeed, the evidence shows that the franchisees did not rely on the written authorization provision. The parties met monthly to plan future advertising, and the franchisees authorized the advertisements by voice vote. The franchisees later received various written conference reports and broadcast orders before the advertising was run. The record supports the bankruptcy court's finding that the parties were satisfied with this procedure and thus waived any right to demand strict adherence to the written authorization requirement.

X-Cel argues next that it had the right to unilaterally terminate the agreement. Eicoff disagrees, contending that the contract's termination clause requires the unanimous action of the four franchisees. The clause provides: "This agreement shall become effective immediately and, unless terminated by either of us upon not less than thirty (30) days written notice or by us, in accordance with Paragraph VII, shall continue indefinitely." The use of the phrase "either of us" strongly supports Eicoff's position that the contract required the franchisees to act as a group in dealing with Eicoff. Nevertheless, X-Cel claims that the termination clause must be read together with Paragraph V of the contract, which states: "During 1981 and 1982, your obligation to us, as between the four of you, shall be several...." To the extent that this latter provision makes the meaning of the termination clause ambiguous, the bankruptcy court properly considered extrinsic evidence. *E.G., Pioneer Trust and Savings Bank v. Lucky Stores, Inc.*, 91 Ill.App.3d 573, 47 Ill.Dec. 36, 38, 414 N.E.2d 1152, 1154 (1st Dist.1980). Extrinsic evidence supporting Eicoff's—and the bankruptcy court's—interpretation of the termination clause includes the testimony of Ronald Bliwas, Eicoff's president, and Dennis Robertson, another franchisee. Moreover, this interpretation is consistent with the franchisees' express purpose of acting as a unified force in the marketplace. Thus, the bankruptcy court's decision that X-Cel could not terminate the agreement by itself is not clearly erroneous.[4]

Finally, X-Cel contends that it was error to allow interest on Eicoff's claim, because X-Cel's plan of reorganization "provided merely for payment of claims in cash, in full on confirmation." We disagree. Nothing in the reorganization plan precludes the payment of interest on a claim. To the contrary, Article II of the plan is entitled "CLAIMS *AND INTEREST* NOT IMPAIRED UNDER THE PLAN" (emphasis added). Eicoff's contract with the franchisees provided for interest, so Eicoff will only be paid "in full" when it recovers its claim with interest.

Accordingly, the bankruptcy court's decision allowing Eicoff's claim in full with interest is affirmed. It is so ordered.

---

**4.** Because Eicoff is entitled to recover its claim under contract law, we need not reach the questions of recovery under quasi-contract, restitution, or other equitable theories.