**In re Gerald Freeman LAMBERT, Debtor.**

**FENTRESS COUNTY BANK, Plaintiff,**

**v.**

**Gerald Freeman LAMBERT, Defendant.**

Bankruptcy No. 3–84–00191.
Adv. No. 3–84–0268.

United States Bankruptcy Court,
E.D. Tennessee.

July 21, 1986.

Child, O'Connor & Petty, Charles H. Child, Jack W. Piper, Jr., Knoxville, Tenn., for plaintiff.

F. Chris Cawood, Kingston, Tenn., for defendant.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

This is an adversary proceeding in which the Fentress County Bank disputes the dischargeability of its debt in the original amount of $45,000.00. 11 U.S.C. § 523(a)(2)(B). The Bank contends that the debtor defendant made materially false representations as to his financial condition in the form of a financial statement dated March 31, 1981, and in the form of a letter addressed to Glen Massengill dated January 19, 1982. The defendant denies the Bank's allegations and asserts that any misrepresentations were not materially false.

I

Mr. Glen Massengill, the president and chief executive officer of Fentress County Bank, handled the transaction involving the $45,000.00 loan to the defendant. Massengill and the defendant had become social acquaintances as early as 1973. Soon thereafter, Massengill became affiliated with Fentress County Bank. At that time, the defendant was employed as a banking examiner with the State of Tennessee with duties consisting of examining banks in the East Tennessee region and reporting on their condition. In 1974, the defendant left the Office of Bank Examination and served first as an assistant loan officer and then as vice-president of the Sunbright Bank until May 1975, when he joined the Smith County Bank as vice-president in charge of operations. In 1978, the defendant was promoted to executive vice-president and cashier of the Smith County Bank; he was the person in charge of running the bank on a day-to-day basis, since the bank did not have an active president. The defendant was also a member of the executive loan committee, the budget committee, and secretary of the board of directors. The defendant admitted that no one else knew more about the Smith County Bank. The lending relationship between Fentress County Bank and defendant began in 1977 and continued up until the loan of January 1982, each loan being made on behalf of the Bank by Glen Massengill. Mr. Massengill testified that, in making the $45,000.00 loan which the Bank contends is nondischargeable, he was aware of the defendant's position with the Smith County Bank and his experience in the banking industry.

Massengill testified that the defendant contacted him in early January 1982, and

told him he wanted to borrow $45,000.00. Massengill told the defendant that he had reviewed the financial statement which the Bank had on file (dated March 31, 1981) and the outstanding loans to the defendant, some $40,000.00—$50,000.00, and that collateral would be needed in order to make any additional loan.[1] The defendant agreed to pledge 1,159 shares of stock in the Smith County Bank and, at the request of Massengill, to provide some evidence of the value of the stock. The defendant provided a letter in which he represented the book value of the stock to be $38.81 per share and the market value to be $50.00 per share based upon "the last known sale of two weeks ago."

On January 22, 1982, the loan of $45,-000.00 secured by 1,159 shares of Smith County Bank stock was made by the Fentress County Bank to the defendant. Massengill testified it was his decision to make the loan and, in reaching this decision, that he relied upon the defendant's history in repaying previous loans made by Fentress County Bank, the financial statement, and the letter. He stated he would not have made the loan without reviewing the defendant's financial statement. Defendant's pledge of the 1,159 shares of Smith County Bank stock was a condition of the loan. Accordingly, both the book value and market value of the stock represented in the January 19, 1982 letter were important to Massengill's decision.

The defendant admitted he was aware of the provision included in the financial statement requiring him to notify the Fentress County Bank of any change affecting his ability to pay. Also, defendant testified that he assumed that Massengill would rely upon the financial statement and his previous payment record in reaching a decision whether to make the loan.

Massengill testified that the principal amount of the loan of $45,000.00 was never reduced and that as of the date of trial, May 20, 1986, interest in the amount of $16,440.00 had accrued. He also testified that the promissory note provides for the payment of an attorney's fee in the event of a default of not less than 15% of the unpaid balance. Since the making of the loan, the Smith County Bank has been declared insolvent and closed by the Commissioner of Financial Institutions, rendering the collateral held by Fentress County Bank worthless. Massengill testified that he had no knowledge that the Smith County Bank was experiencing financial troubles at the time the loan was made; had he known so he would not have taken the stock as collateral for the loan.

The defendant admitted that, as early as 1980 or 1981, he knew that various bank regulatory agencies were concerned with the condition of Smith County Bank. He stated that he signed the quarterly and semiannual call reports to the Federal Deposit Insurance Corporation during 1980, 1981, and 1982, until he left the bank, and that the Consolidated Report of Income for the years 1980 and 1981 reflects a net loss of $123,000.00 and $260,000.00, respectively. The defendant stated that loss of income for consecutive years represents a negative trend that would have adversely affected the value of stock in the Smith County Bank. He also admitted that the primary problems with the Smith County Bank were poor-quality loans, poor earnings and a weak capital position. Defendant admitted that he was aware of each of these problems in January 1982. Further, the defendant agreed that the condition of a bank generally does not improve nor deteriorate over a relatively short period of time and that the Smith County Bank would be no exception.

Tim Mulally, a certified public accountant with the Nashville firm of Marlin and Edmondson, testified as an expert on behalf of the plaintiff. In 1973, after receiving his M.B.A., Mulally went to work for Peat, Marwick & Mitchell. He remained there until 1977, when he joined the firm of Marlin & Edmondson, where he specializes in bank auditing. Mulally testified that his

---

1. Massengill asked the defendant about the statement that was in the Bank's files. Defend-

ant advised him that there had been no significant change.

purpose was to determine the actual value of the Smith County Bank stock as of January 1982. He relied upon the minutes and call reports for Smith County Bank, the Report of Examination of the Federal Deposit Insurance Corporation dated January 10, 1981, and the Report of Examination of the Federal Deposit Insurance Corporation dated March 22, 1982. Based upon the figures provided by the Smith County Bank to the F.D.I.C. in the December 31, 1981 Report of Condition of Bank (call report), Mulally figured the book value to be $35.02 including the bad debt reserve or $31.82 excluding the bad debt reserve. Mulally testified that it was a reasonable assumption that the financial condition of the Smith County Bank would not have changed appreciably from January 1982 until March 1982, when the F.D.I.C. conducted its examination and as a result ordered $527,000.00 to be charged off as a loss and required the bank to place an additional $750,000.00 in the bad debt reserve. (This assumption is corroborated by the testimony of the defendant that the condition of a bank does not generally improve nor deteriorate rapidly and that the Smith County Bank would be no exception.) Mulally also testified that it would be reasonable to assume that an officer of a bank in the position of the defendant would be aware of the condition of the bank and knowledgeable of the actual value of stock of that bank. (The defendant's testimony was corroborative in that he stated that he knew more than anyone about the day-to-day operations of the Smith County Bank.) Further, Mulally testified that if the charge off and the additional reserve are taken into account, the book value of the Smith County Bank stock would be in the range of $18.00 to $20.00 per share and that the market value would be even less.

The Bank served upon the defendant pursuant to Bankruptcy Rule 7036 Requests for Admissions, but the requests were not responded to by the defendant. Request number 16 asked the defendant to admit that each of the problems that caused the Smith County Bank to be closed existed during 1981 and January of 1982. Request number 17 asked the defendant to admit that he had no knowledge of any person who either sold or purchased stock in the Smith County Bank during 1981 or January of 1982 for $50.00 per share. Request number 18 asked the defendant to admit, based upon the Smith County Bank's balance sheet distributed at the annual meeting of shareholders on January 13, 1982, that the book value of Smith County Bank stock was not $38.81 per share.

## II

At issue in this adversary proceeding is whether the $45,000.00 loan made by the Bank should be excepted from discharge pursuant to § 523(a)(2)(B), which reads in pertinent part as follows:

§ 523. Exceptions to discharge

(a) A discharge under § 727 ... of this title does not discharge an individual debtor from any debt—

. . . . .

(2) for money ... to the extent obtained by—

. . . . .

(B) use of a statement in writing—
(i) that is materially false;
(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for such money ... reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive. . . .

11 U.S.C. § 523(a)(2)(B).

The Bank has the burden of proving the elements of § 523(a)(2)(B) by clear and convincing evidence. *In re Martin,* 761 F.2d 1163, 1165 (6th Cir.1985).

It is undisputed that the defendant obtained a loan in the amount of $45,000.00 from the Bank by use of statements in writing respecting his financial condition. There were two written statements submitted by the defendant prior to obtaining the $45,000.00 loan: the March 31, 1981 financial statement and the January 19,

1982 letter. The representations made in the financial statement and the letter were made with respect to the financial condition of the defendant. The remaining elements to be proven by the Bank are that the writing or writings are materially false, that the Bank reasonably relied upon the writings, and that the defendant published the writings with intent to deceive.

■ There are four items in the financial statement which the Bank contends are false and, when either considered separately or in combination, make the financial statement materially false. Only three items will be reviewed by the court. The first item is the 20–acre farm located in Smith County which the defendant represented in his financial statement to be owned solely by himself. On cross-examination, the defendant admitted that he owned the farm as a tenant by the entirety with his wife. The court finds this representation to have been false.

■ The second item appearing in the financial statement that the Bank contends to be materially false is the asset described as "household and personal." The defendant represented that category of his personal assets to be worth $29,000.00. However, as of the filing of his bankruptcy schedules, he listed his household goods to be worth $1,175.00 and his wearing apparel, sports equipment, and other personal possessions to be worth $250.00, making a total of $1,425.00. The defendant attempts to explain the large discrepancy by stating that the figure of $29,000.00 included household and personal possessions owned by his wife and daughters. The financial statement does not, however, purport to be the statement of the financial worth of anyone other than the defendant. Further, due to the defendant's training and experience in the banking profession, he had to be acutely aware of the forms of ownership of property and of the significance at-

tached thereto in evaluating the net worth of an individual. Certainly, he would have been very familiar with financial statements and their use in ascertaining whether a loan should be made. The court does not find the defendant's explanation of the discrepancy to be acceptable but, on the contrary, finds that the representation was false.

■ The third item on the financial statement that the Bank contends is false is defendant's representation that his 2,250 shares of Smith County Bank stock had a market value of $119,250.00, or $53.00 per share. Considering the provision requiring the defendant to notify the Bank of a change in his ability to pay, the defendant represented the bank stock to have a market value of $53.00 per share as of the time of making the loan. Yet, due to his failure to respond to Request number 17 of Plaintiff's Requests for Admissions, the defendant has admitted that he had no knowledge of any sale of Smith County Bank stock during 1981 or January of 1982 in which the sales price was $50.00 per share.[2] The natural implication is that the defendant had no knowledge of a sale that brought as much as $50.00 per share and certainly not as much as $53.00 per share. While the defendant did testify that he knew of sales of Smith County Bank stock during January of 1982 for $50.00 per share, he was unable to recall either the seller or the buyer. Thus, the effect of the admission is to nullify the contradicting testimony. Further, the defendant offered no positive proof of such a sale. The only proof offered as to the market value of the Smith County Bank stock as of January 1982, was offered by the Bank through its expert witness, Tim Mulally. His testimony being the only evidence before the court of the market value of the stock as of January

---

**2.** Fed.R.Civ.P. 36 recites in part:

   (b) *Effect of Admission.* Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission.

The defendant made no motion to withdraw or amend the admission and this court has not granted any relief from the admission.

1982, the court concludes that the market value of the , stock was approximately $20.00 per share at the time of the making of the loan at issue. Hence, the 2,250 shares of Smith County Bank stock would have been valued at $45,000.00 rather than at $119,250.00, an amount slightly less than 38% of the value represented on the financial statement. The court finds this representation to have been false.

■ With respect to the January 19, 1982 letter, the Bank contends that the representation as to both book value and market value were false. The defendant testified that the book value was $38.81 according to the accepted method of calculation. By virtue of Request number 18 of the Plaintiff's Requests for Admissions, however, the defendant admitted, based upon the records of Smith County Bank, that the book value of Smith County Bank stock was not $38.81 per share. The proof offered by the Bank through its expert witness was that the book value, as derived from the December 31, 1981 call report, was $35.02. The figure of $38.81 is an increase of 11% over and above the book value calculated from the December 1981 call report. In addition, the Bank's expert witness testified that the actual book value of the stock as of January 1982 would have been in the range of $18.00 to $20.00. It is the opinion of the court that the actual value of the bank stock during January 1982 was approximately $20.00 per share and that the defendant, due to his position with the bank, knew or should have known that the value per share was significantly less than $38.81 and in the range of $20.00 per share. It is the conclusion of the court that both representations contained in the letter amount to false statements.

Although the court has determined that both the financial statement and letter contained false representations, the court must also determine whether the misrepresentations are material. The table that follows shows the items falsely over-valued in the defendant's financial statement.

| DESCRIPTION | FINANCIAL STATEMENT VALUE | SCHEDULED VALUE | NET OVER VALUATION |
|---|---|---|---|
| 20-Acre Farm | $11,400.00 | 0 | $11,400.00 |
| Household & Personalty | $29,000.00 | $1,425.00 | $27,575.00 |
| Smith Co. Bank Stock | $119,250.00 | $45,000.00 (at $20 per share) | $74,250.00 |
| TOTAL | | | $113,225.00 |

■ The over-valuation of the defendant's equity in the 20–acre farm is equivalent to 25% of the loan. The over-valuation of household and personalty is an amount equivalent to 51% of the loan at issue. The net over-valuation of the bank stock is equivalent to a figure approximately 1.65 times the amount of the loan and certainly is a material misrepresentation. It is not necessary that the court find that each of these items, standing alone, would sustain a finding that the loan made by the Bank should be excepted from the defendant's discharge. Viewing the misrepresentations contained in the financial statement as a whole, rather than separately, the financial statement is materially false. Considered in combination, the total over-valuation exceeds 2.5 times the amount of the loan.

The following table reflects over-valuation of the 1,159 shares of Smith County Bank stock based on the false statements contained in the defendant's January 19, 1982 letter.

| DESCRIPTION | FINANCIAL STATEMENT VALUE | SCHEDULED VALUE | NET OVER VALUATION |
|---|---|---|---|
| Stock-Market Value | $57,950.00 | $23,180.00 (at $20 per share) | $34,770.00 |
| Stock-Book Value | $44,980.79 | $23,180.00 (at $20 per share) | $21,800.79 |
| Stock-Book Value | $44,980.79 | $40,588.18 (at $35.02 per share) | $ 4,392.61 |

■ The court has determined the market value and book value of the stock as of January 1982 was approximately $20.00 per share. The amount of the over-valuation resulting from the representation as to market value is an amount equivalent tc 77% of the loan amount. The amount of the over-valuation of the book value of the

stock as represented in the letter is equivalent to 48% of the loan amount. From these figures it is readily apparent that the misrepresentations were so large as to be material. The third line of the table summarizes the over-valuation that would occur if the book value as represented in the letter were compared to the book value as derived from the December 31, 1981 call report. The over-valuation of $4,392.61 is an amount equal to 10.8% of the loan amount. Thus, even if the court were to take the position most favorable to the defendant there is still an over-valuation. The court finds that the false statements contained in the letter are material.

■ Massengill's testimony strongly supports a finding of reliance on both the financial statement and letter and the court so finds. The court is also convinced that the Bank's reliance was reasonable, especially considering the background, training, and experience the defendant had in the banking industry, all of which Massengill was aware of at the time he made the loan, and the long term lending relationship between the Bank and defendant. See *In re Rodriguez,* 29 B.R. 537, 540 (Bankr.E.D.N.Y.1983) (reliance reasonable where information was given by a professional); *Matter of Garman,* 643 F.2d 1252, 1259 (7th Cir.1980), *cert. denied* 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981) (no duty to verify information given by a long time customer).

■ The court further finds that the Bank has met its burden of proof with respect to the element that the false statements were made with intent to deceive. The law does not require direct proof of fraudulent intent. Such intent may be inferred from the surrounding circumstances. Further, it is sufficient to show that a false statement was made with reckless indifference and disregard of the actual facts and without reasonable grounds to believe the statement to be, in fact, correct. Of course, proof that a false statement was made with actual knowledge of its incorrectness suffices. *Morimura, Arai & Company v. Taback,* 279 U.S. 24, 49 S.Ct. 212, 73 L.Ed. 586 (1929). In this action, it is not necessary for the court to specifically find that the defendant had actual knowledge of the falsity of the statements made in the financial statement and letter. The court is convinced that the defendant was in a position to ascertain the true facts and that if he was not so informed, the false representations that he made were made with reckless indifference and disregard of the actual facts. *In re Martin,* 761 F.2d at 1167. The proof is clear that the defendant was knowledgeable in the area of banking, forms of ownership, completing and evaluating financial statements, and evaluating the financial soundness of banks. Further, it is clear that the defendant's knowledge of the condition of Smith County Bank was superior to that of all other persons.

The court finds that the plaintiff has met each element of its burden of proof of clear and convincing evidence and that the loan of $45,000.00, with interest and attorney's fee, should be excepted from discharge.

This Memorandum constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.