**FEDERAL SAVINGS & LOAN INSURANCE CORPORATION, as Receiver for Crescent Federal Savings Bank, et al.,**

v.

**Robert B. SUTHERLIN.**

**Civ. A. No. 89–3281.**

United States District Court, E.D. Louisiana.

Dec. 14, 1989.

Robert S. Rooth, Trial Atty., New Orleans, La., for appellant.

Michael S. Fawer, New Orleans, La., for appellee.

### OPINION AND ORDER

McNAMARA, District Judge.

### INTRODUCTION

This matter comes before the court on appeal from the United States Bankruptcy Court. The bankruptcy court found that the Appellant, Federal Savings and Loan Insurance Company ("FSLIC" or "Receiver"), the Receiver for Crescent Federal Savings Bank ("Crescent"), violated Bankruptcy Rule 9011 when FSLIC lodged an objection to discharge in the Appellee's, Robert B. Sutherlin ("Sutherlin"), Discharge in Bankruptcy. The bankruptcy court assessed sanctions against FSLIC in the amount of $9,532.94 jointly and severally against FSLIC and Harry Holladay, the Attorney who signed the offensive pleadings.

## FACTS

On May 9, 1986, Sutherlin, a New Orleans Attorney and the former President and Chief Executive Officer of Audubon Federal Savings, filed a voluntary petition for bankruptcy seeking discharge from his debts under Chapter 7 of the Bankruptcy Code. With his petition Sutherlin filed the requisite bankruptcy schedules that listed numerous debts to several parties, and the dates on which they were incurred. The bankruptcy court set July 25, 1986 as the deadline for filing objections to discharge. FSLIC, Crescent's Receiver, moved to extend this filing deadline arguing that it had been appointed as Receiver on June 19, 1986, and that it needed more time to review all the relevant files and financial statements to determine whether or not it had grounds to object to the discharge. FSLIC specifically requested the extension of time because Crescent had not yet undertaken any investigation, and FSLIC recognized that the matter must be reasonably investigated before a decision can be made regarding an opposition to discharge.

The bankruptcy court granted FSLIC's Motion and extended the filing deadline until November 7, 1986. On that date, FSLIC filed an objection to Sutherlin's discharge based primarily upon 11 U.S.C. § 523(a)(2)(B) (1982). This provision holds that a debt otherwise dischargeable will not be discharged if the debt was:

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, to the extent obtained by—

(b) use of a statement in writing—

(I) that is materially false;

(II) respecting the debtor's or an insider's financial condition;

(III) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(IV) that the debtor caused to be made or published with intent to deceive....

§ 523(a)(2)(B) (West Supp.1989).

FSLIC's complaint against discharge claimed that certain financial statements used to obtain loans from Crescent (the "Anatole" loans) were materially false because they failed to disclose all or any of Sutherlin's contingent liabilities. FSLIC states that it compared the financial statements with Sutherlin's sworn bankruptcy schedules and found a discrepancy. FSLIC's examination of the bankruptcy schedules, filed May 9, 1986, showed that Sutherlin had incurred substantial liabilities that were not listed on Sutherlin's financial statements. For example, Sutherlin's Schedule A–3 showed that on December 18, 1981, he owed Alliance Federal Savings Bank $1.5 million. This liability was not reflected as a liability on any of his three statements to Crescent.

Pursuant to Bankruptcy Rule 2004, the debtor was examined on October 16, 1986. The Receiver sought to have Sutherlin explain the discrepancies between his financial statements and his bankruptcy schedules. During the deposition, Sutherlin consistently pleaded the Fifth Amendment to every substantive question. FSLIC also took the deposition of Glen Slavich, one of Crescent's former loan committee members, in connection with another matter. The Receiver discovered that Crescent's loan committee routinely requested and relied on financial statements in determining whether to make large commercial loans. FSLIC also learned from Slavich that Crescent's loan committee spent a significant amount of time reviewing financial statements and loan applications in considering whether to approve large commercial loans. Since FSLIC's investigation unquestionably established that Sutherlin's financial statements given to Crescent were materially false, FSLIC was naturally very concerned. FSLIC then reviewed documents in the Crescent loan file that clearly indicated that Crescent relied on Sutherlin's financial condition in connection with the Anatole loans. FSLIC also learned of the substantial interrelationships between the individuals who guaranteed the Anatole loans. For example, Billy R. Lewis (former head of Twin City Savings Bank), Ralph Hosch (former head of Audubon Federal), and John Sutherlin (Robert's brother and former head of North Lake Federal Savings and Loan Association), who guaranteed the Anatole loans along with Robert Sutherlin,

all were associated with institutions for which FSLIC now acts as Receiver. Each of these individuals had borrowed heavily from some of the other institutions and failed to repay most of their loans. Their institutions bought and sold participations in loans to each other on a regular basis, creating a tangled web of insolvencies and bankruptcies. Based upon all of the foregoing facts, and FSLIC's evaluation of the relevant law, FSLIC believed that the information it had uncovered provided more than sufficient grounds for objecting to Sutherlin's discharge.

On July 24, 1987, FSLIC filed a Motion to Dismiss the Objections to Discharge. Looking at the facts in this case, FSLIC had determined that the expense of prosecuting the claim weighed against only a small hope of any recovery, mitigated against prosecuting its claim.

## SANCTION PROCEEDINGS BELOW

The bankruptcy court ordered the matter dismissed without prejudice on July 29, 1987. Sutherlin then filed a Motion on September 11, 1987, seeking sanctions and costs against FSLIC under Fed.R.Civ.P. 11 and Bankruptcy Rule 9011 for FSLIC's failure to investigate fully before filing its objection to discharge. Counsel for Sutherlin deposed FSLIC's lead counsel, Robert Rooth, on November 10, 1987. After a hearing on the merits conducted on November 16, 1987, the bankruptcy court issued an Order and Findings of Fact and Conclusions of Law, ruling that the Complaint filed by FSLIC violated Rule 11 and merited sanctions. FSLIC moved to appeal this Order, and its Motion was denied as the court's Order was interlocutory.

A quantum hearing was held on October 28, 1988, and the court issued its Order and Findings of Quantum on May 4, 1989. The court's Order assessed attorneys' fees and costs in the amount of $9,532.94 jointly and severally against FSLIC and Harry Holladay, the attorney who signed the pleadings. FSLIC and Holladay filed their Notice of Appeal on May 12, 1989. On May 19, 1989, they filed a Motion to Stay Enforcement of the Bankruptcy Court's Order. This Mo-

tion was granted after a hearing on June 13, 1989. FSLIC and Holladay filed their appeal with this court on August 28, 1989.

The appeal before this court requires the court to answer the following two questions: (1) what is the correct standard of review of a bankruptcy court's order assessing sanctions under Fed.R.Civ.P. 11 and Bankruptcy Rule 9011; and (2) under either a *de novo* or an abuse of discretion standard of review, did the bankruptcy court properly assess sanctions against FSLIC and the attorney who signed the pleadings?

## DISCUSSION

### 1. THE PROPER STANDARD OF REVIEW

■ Appellants argue that the orders of a bankruptcy court are subject to a *de novo* review by a federal district court, pursuant to 28 U.S.C. § 157(c)(1) (1982). The Fifth Circuit, however, recently held in an *en banc* proceeding that an abuse of discretion standard of review should be applied in a Rule 11 case. *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866 (5th Cir.1988). In *Thomas*, the Fifth Circuit considered the different standards of review which appellate courts ought to employ, and explicitly ruled, "after careful consideration of the policies behind Rule 11, we believe application of an abuse of discretion standard across-the-board to all issues in Rule 11 cases is the better approach." *Id.* at 872.

While it is clear that an abuse of discretion standard applies to the review of proceedings under Rule 11, appellants argue that the distinction between "core" and "non-core" proceedings in bankruptcy under 28 U.S.C. § 157 (1982) militates in favor of applying a *de novo* standard of review. FSLIC claims that although objections to discharge are explicitly labeled as core proceedings in Section 157(b)(2)(J), the hearing on Rule 9011 sanctions for failure to conduct a reasonable inquiry before filing an objection to discharge should be a non-core proceeding.

The Fifth Circuit decision of *Matter of Wood,* 825 F.2d 90 (5th Cir.1987), explains the distinction between "core" and "non-core" proceedings. This division resulted from Congress' attempts to comport the federal bankruptcy statute with the Supreme Court's opinion in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). After discussing Section 157 in light of *Marathon,* the Fifth Circuit distinguished between core and non-core proceedings as follows:

> If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but under Section 157(c)(1) it is an "otherwise related" or non-core proceeding.
> We hold, therefore, that a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case. *Wood,* 825 F.2d at 97 (emphasis in original).

This court notes that several other courts have considered whether an award of sanctions under Bankruptcy Rule 9011 is a core or non-core proceeding. Every court that has considered this question has determined that a proceeding to impose sanctions is indeed a core proceeding. *See In re Martin,* 97 B.R. 1013 (N.D.Ga.1989); *In re Wonder Corp. of America,* 81 B.R. 221 (D.Ct.1988), *aff'd,* 82 B.R. 186; *In re Usoskin,* 61 B.R. 869 (E.D.N.Y.1986); *Matter of Emergency Beacon Corp.,* 52 B.R. 979 (S.D.N.Y.1985), *aff'd,* 790 F.2d 285 (2d Cir. 1986). In *Emergency Beacon,* the court reasoned that a hearing by a bankruptcy court to impose sanctions based upon conduct occurring during a core proceeding is also a core proceeding. The court reasoned that "if the bankruptcy courts are to administer 'the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power,' they must also have the power to sanction parties that interfere with such administration." *Id.* at 987. The power to sanction parties fosters efficient resolution of pending, as well as future, bankruptcy proceedings. As such, the court held that the question of whether to impose sanctions based upon conduct occurring before a core proceeding is a "'matter ... integral to the adjudication of bankruptcy,' and one that has been 'traditionally before the bankruptcy court.'" *Id.,* quoting *In re X–Cel, Inc.,* 46 B.R. 202, 204 (N.D.Ill.1984).

An objection to discharge is explicitly made a core proceeding. Determination of a Rule 11 motion for sanctions based upon failure to investigate an objection to discharge clearly depends upon the sort of expertise and familiarity with bankruptcy law that the *Wood's* court found were important factors in determining whether a proceeding is core or non-core. Adjudication of a Rule 11 motion is inextricably intertwined with the substantive law of the pleadings in question. For these reasons, the case law has unanimously held that Rule 11 proceedings in bankruptcy court are core proceedings.

FSLIC fails to cite a single case in support of its contention that sanctions under Rule 9011 is a non-core proceeding. Instead, FSLIC argues from an analysis of the general core/non-core distinction, and attempts to draw an analogy between contempt proceedings and proceeding to impose Rule 11 sanctions. FSLIC's argument does not provide any sound reason, nor does this court find one of its own, for the court to decline to follow the settled authority which holds that an award of sanctions under bankruptcy Rule 9011 is a core proceeding. Accordingly, this court holds that the correct standard of review in this matter is an abuse of discretion standard.

**2. DID THE BANKRUPTCY COURT ABUSE ITS DISCRETION IN HOLDING THAT FSLIC VIOLATED FEDERAL RULES OF CIVIL PROCEDURE 11 AND BANKRUPTCY RULE 9011?**

■ The bankruptcy court found that FSLIC violated Bankruptcy Rule 9011 and Fed.R.Civ.P. 11 by failing to conduct a reasonable inquiry before filing its objection to Sutherlin's discharge.

11 U.S.C. § 523(a)(2)(B) (West Supp.1989) establishes four criteria which must be met to bar the discharge of a debt obtained by use of a statement in writing. These criteria are as follows:

1. The statement must be materially false;

2. The falsity must relate to the debtor's financial condition;

3. The creditor must have reasonably relied on the statement; and,

4. The statement must have been made or published with intent to deceive.

The bankruptcy court found that in investigating the first two criteria, FSLIC compared Sutherlin's statements to his bankruptcy schedules and examined Sutherlin pursuant to Bankruptcy Rule 2004. The court found that this investigation was insufficient because FSLIC had been granted an extension of time for which to object to discharge, and thus they had adequate time to investigate more fully. The bankruptcy court noted that the singular use of Bankruptcy Rule 2004 constituted an inadequate use of discovery tools since FSLIC should have anticipated that Sutherlin would invoke his Fifth Amendment rights and that no information would be forthcoming from him. The court also determined that the Receiver should have checked into the existence of the controversial debts, the whereabouts of the questioned property, and the accuracy of the financial statements, presumably by taking further depositions pursuant to Bankruptcy Rule 2004. The bankruptcy court concluded that since the Receiver had failed to investigate adequately the first two criteria of Section 523(a)(2)(B), the court did not need to address whether FSLIC adequately investigated the other criteria under the Section.

This court holds that the burden imposed upon FSLIC by the bankruptcy court amounts to a "thorough discovery" standard instead of the "reasonable inquiry" standard mandated by Rule 11. If the holding of the bankruptcy court would be affirmed, it would mean that plaintiffs, in order to meet the requirements of Rule 11, (1) must conduct a "thorough discovery" before filing a complaint; (2) must anticipate when the defendant will assert his Fifth Amendment privilege against self-incrimination; (3) draw no inference from the defendant's assertion of that privilege; and (4) must engage in extensive methods of investigation in those cases in which a debtor in bankruptcy fails to fulfill his affirmative duty to explain his financial affairs. This burden is far beyond the requirements of Rule 11, and the bankruptcy court's holding, therefore, constitutes a clear abuse of discretion.

Fifth Circuit jurisprudence for determining whether a party or its attorney has violated Federal Rules of Civil Procedure 11 is controlled by *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866 (5th Cir.1988) (*en banc*). Since Bankruptcy Rule 9011 contains the same prohibitions as Federal Rule 11, the *Thomas* guidelines apply equally to alleged violations of the Bankruptcy Rule. The *Thomas* court set forth the following guidelines concerning whether a reasonable inquiry has been conducted before the filing of a pleading:

The determination of whether a reasonable inquiry into the facts has been made in a case will, of course, be dependent upon the particular facts; however, the district court may consider such factors as the time available to the signer for investigation; the extent of the attorney's reliance upon his client for the factual support for the document; the feasibility of a pre-filing investigation; whether the signing attorney accepted the case from another member of the bar or forwarding attorney; the complexity of the factual and legal issues; and the extent to which development of the factual circumstances underlying the claim

requires discovery. As to the determination of whether a reasonable inquiry into the law has been made, a district court may consider the time available to the attorney to prepare the document; the plausibility of the legal view contained in the document; the pro se status of a litigant; and the complexity of the legal and factual issues raised. *Id.* at 875–6. The Fifth Circuit has further held that compliance with Rule 11 is determined by an objective standard of reasonableness under the circumstances. *Thomas,* 836 F.2d at 873; *Willy v. Coastal Corp.,* 855 F.2d 1160, 1172 (5th Cir.1988). The jurisprudence consistently demonstrates that the burden under Rule 11 is that the party must only have a reasonable basis for filing the pleading and for making the allegations contained therein; the party need not be able to prove beyond all doubt the matters he alleges.

While the bankruptcy court held that the Receiver should have conducted further investigation regarding the first two factors of Section 523(a)(2)(B), the court did not consider whether the investigation performed by FSLIC provided an adequate basis for determining whether Sutherlin's statements were materially false, and whether the statements related to Sutherlin's financial condition. Instead, the court concluded that FSLIC's reliance upon Sutherlin's sworn bankruptcy schedules and on Sutherlin's silence at his Rule 2004 examination were insufficient.

It is clear that Sutherlin failed to list millions of dollars of liabilities on his financial statements, and that these omissions made these financial statements materially false. Several courts have recognized that comparing a debtor's financial statements to his sworn bankruptcy schedules provides an acceptable method of determining whether the financial information contained in the financial statements is false. *See, e.g., In re Vermont,* 98 B.R. 581, 583 (M.D. Fla.1989); *In re Lambert,* 64 B.R. 170, 175–76 (E.D.Tenn.1986); *In re Janes,* 51 B.R. 932, 935–36 (D.Kan.1985). In these decisions, the bankruptcy courts compared the representations made in the debtors' financial statements to those disclosed on the bankruptcy schedules in determining whether the financial statements were materially false.

FSLIC's comparison in this matter has an explicit basis in the jurisprudence, and it plainly established that substantial discrepancies existed between Sutherlin's financial statements and his sworn bankruptcy schedules. For example, Sutherlin's statement in March, 1982, listed no contingent liabilities and no primary liabilities greater than $140,000.00 on a real estate mortgage. His bankruptcy schedules, however, show that as of December, 1981, before the statement was made, he had a liability to Alliance Federal Savings in the amount of $1,500,000.00. In addition, his financial statement dated December, 1983, discloses contingent liabilities of one-third of $250,-000.00, and total principal liabilities of only $255,000.00. Yet, his bankruptcy schedule, in addition to showing the Alliance debt, discloses a $1.2 million liability to Crescent, a $1.2 million liability to Jefferson Bank, and a $12 million liability to North Lake Federal, all of which were incurred before the date of his December, 1983, financial statement. Given these facts, it is more than reasonable for FSLIC and its attorneys to have concluded that the information on Sutherlin's financial statements was false.

Furthermore, FSLIC's comparison demonstrated that Sutherlin's false statements were indeed material. A false statement is material in the bankruptcy context if the statement is substantially inaccurate. *In re Anzman,* 73 B.R. 156, 163 (D.Colo.1986). Sutherlin's non-disclosed liabilities were substantially greater than Sutherlin's own statements regarding his net worth. Thus, the statements were substantially inaccurate, and these financial statements irrefutably related to his financial condition.

FSLIC's conclusion that Sutherlin's financial statements were materially false was in accordance with the controlling case law. The jurisprudence, in addition to authorizing comparisons between bankruptcy schedules and a debtor's financial statements, also consistently holds that material

omissions, such as the failure to list contingent liabilities in the space provided for on the financial statement form, constitute a response that no such liability exists. *In re Bebar*, 315 F.Supp. 841, 845 (E.D.N.Y. 1970). Moreover, false statements and omissions take on a heightened significance when the person making them is a well educated, financially sophisticated party like Sutherlin. *Lambert*, 64 B.R. at 175; *In re Blotz*, 37 B.R. 401, 404 (E.D.Wis. 1984); *Anzman*, 73 B.R. at 163.

This court also finds that the Receiver was entitled to rely upon and draw a negative inference from Sutherlin's invocation of his Fifth Amendment rights at his Bankruptcy Rule 2004 examination. In *Chase Manhattan Bank, N.A., v. Frenville*, 67 B.R. 858, 861–62 (D.N.J.1986), the court found that with regard to an objection to discharge for a debt under 11 U.S.C. § 543 (1982), "[t]he Court may ... draw an adverse inference in a civil matter where the party refuses to 'testify in response to probative evidence offered against' it." *Id.* at 862, quoting, *Baxter v. Palmigiano*, 425 U.S. 308, 319, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976). Sutherlin's refusal to testify reinforced FSLIC's grounds for filing its objection to discharge. Sutherlin had an obligation to explain the discrepancies between his financial statements and his bankruptcy schedules in furtherance of his petition to be discharged from his debts. His refusal to explain these discrepancies, even though they were undertaken pursuant to his Fifth Amendment rights, can give rise to an adverse inference that his financial statements were false. While it is true that a "plaintiff may not rest a judgment on defendant's constitutionally protected silence alone," (*Frenville*, 67 B.R. at 862), FSLIC was able to draw a permissible inference from Sutherlin's silence which reasonably reinforced the discrepancies that it uncovered in its investigation. *Id.*

Fed.R.Civ.P. 11 and Bankruptcy Rule 9011 do not require that a party undertake a comprehensive and exhaustive investigation into every minute facet of a case before the filing of a pleading. The law requires only that a party conduct a reasonable investigation into the truth of the allegations before filing a complaint. In this matter, FSLIC's investigation regarding the first two elements of Section 523, as a matter of law, was more than reasonable since it uncovered prima facie evidence demonstrating that Sutherlin submitted materially false financial statements in connection with the Anatole loans. The bankruptcy court's finding that the Receiver should have undertaken further discovery, and that FSLIC could not rely on Sutherlin's sworn bankruptcy schedules is contrary to the prevailing jurisprudence and constitutes an abuse of discretion. This court holds, therefore, that FSLIC undertook a reasonable investigation as a matter of law into whether Sutherlin's financial statements were materially false, and into whether that falsity related to Sutherlin's financial condition.[1]

### 3. FSLIC'S INVESTIGATION REGARDING RELIANCE AND INTENT UNDER SECTION 523

The bankruptcy court assessed sanctions against FSLIC and its attorney only on the basis of the first two factors in Section 523(a)(2)(B). The court did not discuss the adequacy of the Receiver's investigation into the reliance and intent factors, stating that such consideration was unnecessary in light of its findings regarding the first two factors. Nevertheless, the record clearly demonstrates that FSLIC satisfied its obligation with regards to the latter factors. In order to satisfy the reliance factor in Section 523, a creditor must rely on the false financial statement. Its reliance, however, need not be total; even partial reliance on such a statement is sufficient. *In re Harmer*, 61 B.R. 1, 6 (D.Utah 1984);

---

**1.** Appellants also argued that the bankruptcy court erred in finding FSLIC's attorney, Harry R. Holladay, jointly and severally liable with FSLIC for the imposed attorney's fees and costs. Because this court holds that sanctions are im-

proper since the Receiver undertook a reasonable investigation as a matter of law before filing its objection to discharge, it is unnecessary for the court to address that issue.

*In re Blatz*, 37 B.R. 401, 405 (E.D.Wis. 1984). The creditor can demonstrate its reliance by proving that the false statement was made to support an application for credit, and that credit was provided after the statement was received. *Industrial Bank of Commerce v. Bissell*, 219 F.2d 624, 626 (2d Cir.1955). Moreover, under the doctrine announced by the Supreme Court in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), as held applicable to a receiver in *FDIC v. McClanahan*, 795 F.2d 512, 514, n. 1 (5th Cir.1986), FSLIC is entitled to rely on the failed institution's records as a matter of law. In light of this jurisprudence, the Receiver's investigation in this matter was more than sufficient. For example, the deposition of Slavich revealed the following: (1) that Crescent's loan committee regularly requested financial statements in connection with loan applications; (2) that the loan committee reviewed the statements; (3) that the committee spent a considerable amount of time reviewing such information prior to approving commercial loans. Also, FSLIC and its attorneys reviewed Crescent's loan file regarding the Anatole loans, and found several documents demonstrating that Crescent did rely on Sutherlin's financial statement. The loan file contained documents indicating that Crescent sought to verify Sutherlin's employment, his residential mortgage loan, and his credit worthiness. Crescent's "Real Estate Loans Documentation Check List" indicated that the financial statements in the file were indispensable. The "Loan Committee Subdivision" reported Sutherlin's net worth in accordance with the figure Sutherlin listed on his financial statement. Crescent's loan file, combined with Slavich's testimony, constituted sufficient evidence to establish a prima facie case of reliance. This court holds that the Receiver and its attorneys conducted an adequate inquiry concerning this element as a matter of law. As such, there is no basis for imposing sanctions in regard to the reliance element of Section 523.

Regarding the fourth element, an intent to defraud, a creditor need not prove intent by direct evidence. The debtor's intent to defraud may be presumed from circumstantial evidence, and from circumstances such as gross omissions, negligence, or misstatements on his financial statements. *See In re Vermont*, 98 B.R. 581, 584 (M.D. Fla.1989); *In re Liptak*, 89 B.R. 3, 5 (W.D. Pa.1988); *In re Anzman*, 73 B.R. 156, 164 (D.Colo.1986). Sutherlin's non-disclosures were significant. Each of his three financial statements submitted to Crescent in connection with the Anatole loans contained omissions of over a million dollars. These are gross omissions, particularly in light of the fact that Sutherlin placed them on his bankruptcy schedules. His action provides more than a sufficient basis for inferring that he knew he had these liabilities, but that he failed to disclose them with an actual intent to deceive.

The evidence demonstrates that Sutherlin was an experienced attorney and the Chief Executive Officer of Audubon Federal. Based on his position and knowledge, one can clearly infer that he knew or should have known the importance of listing all of his liabilities, principal and contingent, on his financial statements. *See e.g., In re Harmer*, 61 B.R. 1, 9–10 (D.Utah 1984).

This court holds that the Receiver and its attorneys conducted an adequate investigation as a matter of law. The evidence in their possession sufficiently indicated a prima facie case of intent to deceive. The conduct of FSLIC and its attorneys in regards to the fourth element provides no basis for the imposition of sanctions in this matter.

Accordingly, IT IS ORDERED that the decision of the United States Bankruptcy Court for the Eastern District of Louisiana, assessing attorneys' fees and costs in the amount of $9,532.94 jointly and severally against FSLIC as Receiver for Crescent Federal Savings Bank and Harry R. Holladay, the Receiver's attorney who signed the Complaint, should be and is hereby REVERSED since the bankruptcy court's holding constituted a clear abuse of its discretion.